**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William David LIVELY,
Defendant-Appellant.**

**No. 85–3788.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 10, 1986.

Artice L. McGraw, Cetti, McGraw, Bearman & Eddins, Pensacola, Fla., for defendant-appellant.

Paul Alan Sprowls, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before GODBOLD and TJOFLAT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

Appellant William David Lively brings this appeal from his conviction in federal district court for conspiring to distribute cocaine.[1] He seeks a new trial on three independent grounds: (1) the district court erred in refusing to instruct the jury that once a co-conspirator becomes a government informer he can no longer be a member of the conspiracy; (2) the district court erred in refusing to instruct the jury that a mere buyer/seller relationship does not by itself establish a conspiracy between buyer and seller; and (3) the district court abused its discretion in admitting a tape-recorded conversation between the appellant and David Richards, a government informer. We find merit in appellant's first ground and accordingly reverse his conviction and remand the case for a new trial.

I.

On March 24, 1985, law enforcement officers searched the home of David Richards pursuant to a search warrant. The officers seized from the premises twenty-five small bags, containing a total of twenty-four grams of cocaine. This cocaine was the balance of an ounce (twenty-eight grams) that Richards had purchased in bulk form from appellant six or seven days before the search for a price of $1,500, $800 of which Richards still owed appellant. Richards had used a small pair of scales borrowed from appellant to break the ounce of cocaine into one-gram packets.

Richards agreed to cooperate with Drug Enforcement Administration (DEA) officials in their investigation of appellant. On April 10, 1985, Richards delivered to appellant the $800 balance of the purchase price, which the DEA furnished him. Richards wore a transmitting device placed on him by DEA Agent Richard Hahner as he delivered the money to appellant.

Hahner remained in a car near appellant's home in order to operate a receiving and recording device. When Richards approached the house, another agent in the car activated the recorder and receiver. Hahner, unaware that the receiver had already been activated, inadvertently turned off the receiver when the conversation began. Hahner reactivated the equipment when he discovered his error, but approximately seven seconds of the conversation between Richards and appellant were not recorded. During the recorded portion of the conversation, Richards and appellant discussed their cocaine transaction, resale activity by Richards, and the possibility of future cocaine transactions.

II.

Appellant's first claim of error is that the district court erred in refusing to instruct the jury, in accordance with his requested instruction, that a co-conspirator can no longer be a member of the alleged conspiracy once he becomes a government informer. We review appellant's claim with the recognition that a district court's refusal to deliver a requested instruction is reversible error if, and only if, the instruction "(1) is correct, (2) is not substantially covered by other instructions which were delivered, and (3) deals with some point in the trial so 'vital' that the failure to give the requested instruction seriously im-

1. *See* 21 U.S.C. §§ 812, 841 (1982) (amended 1984); 21 U.S.C. § 846 (1982).

paired the defendant['s] ability to defend." *United States v. Stone*, 702 F.2d 1333, 1339 (11th Cir.1983).

At trial, appellant requested the following instruction:

Members of the jury, you are hereby instructed that after the arrest of David Richards on March 24, 1985, he became the Government's agent and informer and thereafter could not be a co-conspirator with William David Lively because one who acts as a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator.

The requested instruction comported with the law, for it is well-settled that a person cannot conspire with a government informer who secretly intends to frustrate the conspiracy. *See United States v. Richardson*, 764 F.2d 1514, 1529 (11th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985); *Sears v. United States*, 343 F.2d 139, 142 (5th Cir.1965).[2] Furthermore, the defendant "is entitled to have presented instructions relating to a theory of defense for which there is *any founda-*

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**3.** The indictment alleged that appellant also conspired with one or more other persons unknown to the grand jury. The existence of other conspirators is not pertinent to any of the issues presented in this appeal.

**4.** The conversation between appellant and Richards included the following colloquy:

RICHARDS: Listen, I made a little bit of money so I wanna give you some ...
LIVELY: Well, what for?
RICHARDS: That money I owe ya. That money I owe you that I've owed you for. Remember?
LIVELY: ... from the book stuff?
RICHARDS: Yeah, yeah ...
....
LIVELY: goddam, you must of done alright
RICHARDS: Yeah I done good, when we gonna get some more of that shit
LIVELY: Old what's his name's comin', couple of days ...
....
LIVELY: goddam man, I didn't have no idea you done that well on that shit, ah, he's

*tion* in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Young*, 464 F.2d 160, 164 (5th Cir.1972) (emphasis added) (quoting *Tatum v. United States*, 190 F.2d 612, 617 (D.C. Cir.1951)).

In this case, the indictment alleged that appellant conspired with Richards [3] "on or about March, 1985, and continuing through on or about May 1, 1985." Until his arrest on March 24, 1985, Richards was not a government informer and could have conspired with appellant. Without an instruction on the *Sears* rule, however, the jury may well have believed that it could convict appellant for "conspiring" with Richards after March 24. For instance, during the recorded conversation between appellant and Richards on April 10, they discussed the possibility of buying "some more" cocaine from a supplier.[4] Relying on this evidence, the jury may have concluded that appellant and Richards formed the charged conspiracy on that date because nothing in the court's charge to the jury indicated that Richards could not have conspired with appellant at that time.[5]

comin' through here, well the thing is he's gonna be with Super Bike Mike, I don't know if he gonna be ...
....
LIVELY: goddam! I, I'd order me a goddam, ah, ah ...
RICHARDS: let's see, see what we can do and to get some more coke man
LIVELY: Well, yeah ...
RICHARDS: I'm ready ...
LIVELY: Shit yeah, if you wanna do that, man ...
RICHARDS: Yeah, I'm ready ...
....

On retrial, the trial judge might consider elaborating on the defense's requested instruction by advising the jury that Richards could have been appellant's co-conspirator during the time period *before* March 24, 1985, and that it could find appellant guilty of the charged conspiracy even though Richards subsequently became a government informer.

**5.** The trial judge's conspiracy instruction to the jury stated as follows:

I will now take up the specific charges of the indictment in this case. Before doing that, please remember, as I have already told you, the indictment is not part of the evidence in this case. It's merely an accusation, and

The trial court's failure to deliver the requested instruction thus seriously impaired appellant's defense. An essential element of the conspiracy offense was appellant's knowledge or intent to distribute cocaine. *See* ·21 U.S.C. § 841(a)(1) (1982).

The defense's theory in this case was that appellant did not know that Richards would resell the cocaine, and only became aware that he had been reselling it on April 10— after Richards had become a DEA informer.[6] Moreover, appellant's knowledge that

you may not draw any inference of guilt from it. That's particularly important for you to remember, because you will have a copy of the indictment in the jury room. This is the indictment, by the way, and it's a three-page document, and you'll notice that it charges both Defendant William David Lively, but it also includes in the indictment Defendant David Richards, and you will note that it includes three counts. Now, I think it's already been mentioned to you that the charges against Defendant Lively set out in Count I have already been dismissed by the government. Defendant Lively is not named in Count III. So that leaves only Count II. So the charges that you should consider in this indictment are only those charges that are set out in Count II of the indictment insofar as they apply to Defendant Lively.

Now, the guilt or innocence of a defendant for any of the crimes charged must be established by the evidence before you considered in the light of these instructions. So I remind you again, the indictment merely contains the accusations against the defendant, and it is not to be considered by you as evidence of anything else.

To briefly summarize the indictment, Count II charges that the defendant knowingly and willfully conspired to distribute cocaine, the alleged conspiracy being a violation of Title 21, United States Code, Section 846. In Count II you will note that the defendant is not charged with the distribution of cocaine. Rather he is charged with having conspired to do so in violation of Title 21, United States Code, Section 846. Now, that section, Section 846, makes it a separate federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would be a violation of Section 841(a)(1). Section 841(a)(1) makes it a crime for anyone to knowingly distribute cocaine.

So under the law, a conspiracy is an agreement or a kind of partnership in criminal purpose in which each member becomes the agent or partner of every other member. In order to establish a conspiracy offense, it's not necessary for the government to prove that all of the people named in the indictment were members of the scheme or that those who were members had entered into any formal type of agreement. Also, because the essence of a conspiracy offense is the making of the scheme itself, it's not necessary for the government to prove that the conspirators ac-

tually succeeded in accomplishing their unlawful plan.

What the evidence in the case must show beyond a reasonable doubt is two things. First that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment. And second, that the defendant knowingly and willfully became a member of such conspiracy. A person may become a member of a conspiracy without ·full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. So if a defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict him for conspiracy, even though he had not participated before and even though he played only a minor part.

Of course, mere presence at the scene of a transaction or event or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests doesn't necessarily establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

You will note that the indictment charges that the offense was committed on or about a certain date. The government does not have to prove with certainty the exact date of the alleged offense. It is sufficient if the government proves beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, and not because of mistake or accident. The word "willfully," as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely with the specific intent to do something the law forbids, that is, with bad purpose either to disobey or disregard the law.

6. The Government contends that there was substantial evidence of a conspiracy prior to the time Richards became a DEA informer, emphasizing that Richards purchased the ounce of cocaine from appellant before Richards was arrested. The Government's argument overlooks

Richards would distribute the cocaine could not necessarily be inferred from the quantity of cocaine involved, particularly in light of Richards' testimony that one ounce could be used for personal consumption. Thus, the trial court's failure to instruct the jury concerning the inability of a government informer to conspire with another person significantly diminished appellant's ability to argue that he did not knowingly scheme with Richards to distribute cocaine. Whether appellant had knowingly formed a conspiracy with Richards prior to Richards' arrest was a question that should have been put to the jury.[7]

The trial court's failure to deliver a correct instruction that addressed this vital aspect of the defense's theory of the case and that was not substantially covered by other instructions is reversible error. *See Stone,* 702 F.2d at 1339. Accordingly, appellant is entitled to a new trial.

### III.

Although our disposition of appellant's first claim of error makes it unnecessary for us to dispose of his second and third claims, we address them briefly because the questions they pose are likely to arise at appellant's retrial.

### A.

■ Appellant's second claim of error is that the district court wrongly refused to deliver the following instruction:

Members of the Jury, you are hereby instructed that if you find that a simple buyer/seller relationship existed between David Richards and William David Lively, it cannot be transformed into a con-

spiracy solely on the basis of one transaction; and the relationship between buyer and seller alone does not establish a conspiracy.

Even if a requested jury instruction is proper, the trial court has some discretion in framing the instruction. If the charge to the jury adequately and correctly covers the substance of the requested instruction, there is no reversible error. *See United States v. Stone,* 702 F.2d 1333, 1339 (11th Cir.1983); *United States v. Walker,* 720 F.2d 1527, 1541 (11th Cir.1983), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984).

In *United States v. Stephens,* 492 F.2d 1367, 1372 (6th Cir.), *cert. denied,* 419 U.S. 852, 95 S.Ct. 93, 42 L.Ed.2d 83 (1974), the defendants were convicted of conspiring to transport and distribute stolen goods in interstate commerce. The trial judge refused to instruct the jury that a simple buyer/seller relationship does not constitute a conspiracy to deal in stolen property. *Id.* The court of appeals found that the requested instruction was unnecessary:

The [trial] court very carefully recited the elements required for a finding of conspiracy and membership in the conspiracy by any of the defendants, and in following these instructions the jury could not have found a defendant guilty unless it believed beyond a reasonable doubt that he was part of the overall conspiracy and not just a purchaser or seller of stolen goods.

*Id.*

■ In the instant case, the trial court properly recited the elements of the drug conspiracy offense. The jury was instruct-

---

the factual dispute concerning the point in time when Richards told appellant that he intended to distribute the ounce of cocaine, i.e., when the two men actually conspired to distribute the cocaine. Asked at trial when he informed appellant that he intended to break the cocaine into one-gram portions for resale, Richards said *"Probably* when I picked it up" (emphasis added).

**7.** In rejecting appellant's requested instruction, the trial court stated that Richards "became a cooperator with the government after the con-

spiracy supposedly came into being and took place, so the conspiracy existed prior to the time Mr. Richards started cooperating. That's my construction of the evidence." In effect, the trial court rejected the defense instruction based on its assessment of the facts. Yet our precedent establishes that the defense's instruction should be given if there is any foundation for the instruction, even if the evidence is weak, insufficient, or inconsistent. *See Young,* 464 F.2d at 164.

ed that (1) two or more persons must come "to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment"; and (2) "the defendant [must] knowingly and willfully [become] a member of such conspiracy." In addition, the jury was instructed that "a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator."[8] These instructions addressed the substance of the requested instruction: without a showing of knowledge, a single, isolated act by a defendant does not by itself constitute participation in a conspiracy. Thus, we hold that the trial court's jury charge adequately and correctly covered the appellant's requested instruction on simple buyer/seller transactions.

### B.

■ Appellant's final claim of error is that the district court abused its discretion by admitting the DEA's recording of the April 10, 1985 conversation between appellant and Richards. A trial judge has broad discretion in determining whether to admit such a recording into evidence. *United States v. Richardson,* 764 F.2d 1514, 1523–24 (11th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985); *United States v. Hughes,* 658 F.2d 317, 322 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982).[9] As a general matter, the prosecutor must establish (1) that the operator of the recording equipment was competent, (2) that the equipment functioned accurately, (3) that the tape has not been materially altered, and (4) the identity of the speakers. *Hughes,* 658 F.2d at 322. All of these elements were proven in the instant case.

■ Appellant contends, however, that the seven-second gap near the beginning of the tape recording rendered the entire recording inadmissible. Unless the inaudible portions of a tape recording were "so substantial as to render the recording as a whole untrustworthy," the tape may be admitted at trial. *United States v. Nicoll,* 664 F.2d 1308, 1314 (5th Cir. Unit B), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982) (citations omitted), *overruled on other grounds, United States v. Henry,* 749 F.2d 203 (5th Cir. 1984).

The facts of *Nicoll* are similar to those in the case at hand. A one-minute gap in the tape recording in *Nicoll* was created when the tape reached the end of one side and was turned over to continue recording. *Nicoll,* 664 F.2d at 1314. The court found that the gap "hardly rendered the tape as a whole untrustworthy, and no error resulted from its admission." *Id.* We find that the admission of the tape in this case, which had a mere seven second gap, was not an abuse of the district court's discretion.

### IV.

In light of our conclusion on the appellant's first claim of error, the judgment of the district court is REVERSED and the case is REMANDED for a new trial.

REVERSED and REMANDED.

8. These instructions conformed to the appropriate pattern jury instructions for violations of 21 U.S.C. § 846(a)(1) (1982). *See* Committee on Pattern Jury Instructions, District Judges Association of the Eleventh Circuit, Pattern Jury Instructions: Criminal Cases 213–14 (1985 ed.).

9. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.