528 So.2d 36 (1988)
Shirley Edmond HOLLAND, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1717.
District Court of Appeal of Florida, Fourth District.
June 15, 1988.
Rehearing and Clarification Denied July 27, 1988.
*37 Stuart Markman and D. Frank Winkles of Winkles, Trombley & Kynes, P.A., Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Noel A. Pelella, Asst. Atty. Gen., West Palm Beach, for appellee.
KLEIN, HERBERT M., Associate Judge.
Appellant, Shirley Holland, was charged by information with trafficking in cocaine, convicted by a jury, and now appeals. Appellant argues that the trial court erred by not ruling that there was entrapment as a matter of law, and also contends that he was coerced into withdrawing an alleged exculpatory tape recording from introduction into evidence. We reject appellant's claims and affirm his conviction.
The record in this case establishes that appellant, identifying himself as Gene Barfield, contacted confidential informant John Bordas. Bordas and appellant first met in December of 1983 and discussed the buying and selling of drugs, and committing burglaries. Bordas put appellant in contact with undercover Detective Tom Tiderington, and advised Tiderington that appellant was "dealing in large quantities of narcotics" and was interested "in purchasing a quantity from us." Appellant and Tiderington initially met on June 5, 1984 at a Holiday Inn in Hollywood, Florida. At this meeting Tiderington advised appellant that he had access to large quantities of marijuana and cocaine and could supply appellant with drugs. Appellant told Tiderington that he was interested in purchasing marijuana since appellant had just lost a large load of cocaine "in the Fort Myers area on a boat that had been confiscated by the police." At appellant's request, they went outside to Tiderington's undercover vehicle where appellant was given a sample of marijuana which he inspected. The conversation outside the Holiday Inn at the undercover vehicle was taped.
Thereafter, there was a series of telephone conversations and personal meetings between Tiderington and appellant, many of which were recorded. On June 26, 1984, appellant, who is a real estate broker, advised Tiderington that he wished to exchange certain commercial property in Port St. Charlotte for five (5) units of cocaine. Appellant met with Tiderington in Port St. Charlotte on July 3, 1984. On that date, at a McDonald's restaurant, appellant revealed his true identity to Tiderington. Appellant explained to Tiderington that whenever he did transactions for marijuana or cocaine he wanted to refer to them as "gemstones." The exchange of cocaine for property was consummated at a Marriot Hotel room in Ft. Lauderdale on July 5, 1984. Appellant was arrested driving out of the parking lot in possession of the cocaine. The entire conversation between appellant and Tiderington, during which the exchange took place, was recorded and played into evidence.
Appellant testified at his trial that he was "posing" as a drug dealer to solve the murder of an acquaintance, since the murder was thought to be drug related. Appellant admitted sticking his head into a bag containing white powder and talking about future transactions. Appellant's theory *38 of defense was that he did not intend to purchase narcotics but really wanted to exchange real property for gemstones. Appellant testified at the trial as to his version of the July 5th meeting at the Holiday Inn, stating that he thought the bag he carried out of the Marriott was gemstones and that it was a part of his undercover investigation. Other witnesses also testified for the defense concerning appellant's good character.
On the second day of trial, appellant produced a purported tape of the conversation of July 5th. On appellant's tape only appellant's voice was completely audible, unlike the tape authenticated by Detective Tiderington, in which both voices were audible. The appellant's tape was also at complete variance to Tiderington's tape. After consulting with his client, defense counsel informed the court that appellant's tape was made inside the Holiday Inn July 5, 1984, before Tiderington turned on his recording device. The state argued that there had been a discovery violation; that the tape was not authentic and had been manufactured by the appellant; and further requested that it have an opportunity to have the tape analyzed by an FBI expert in Virginia.
The trial court began a Richardson[1] inquiry and initially determined that it could not find a lack of good faith on the part of the defense counsel who stated that he was aware of the tapes existence two months before the trial and thought he had listed the tape on his exhibit list but thought that the tape had been lost. The trial judge ruled that while he could suppress the tape for a discovery violation, because of prejudice to the State, he would delay the proceedings for the purpose of allowing the State to have the tape technically analyzed. The question then arose as to whether the tape could be authenticated by appellant, that is, that the tape was what it purported to be, namely, a conversation between Tiderington and appellant (in order for a recorded conversation to be admissible, authentication as to the identity of the speakers must be established and that the operator of the recording equipment was competent, the equipment functioned accurately, and the tape had not been materially altered).
Appellant argues that through threats and coercion he was not permitted to testify as to the authenticity of the tape. This is so, appellant claims, because defense counsel advised the court that Detective Tiderington, after listening to the tape, had indicated that in his opinion "it was a third degree felony violation of the law" (see section 934.03, Florida Statutes, dealing with interception of communication) and that this was made even more coercive by both the court and the state attorney advising appellant of his right against self-incrimination. This contention is negated by the record.
The statement by Detective Tiderington as to a possible criminal violation, as well as the cautionary statements made by the court to the appellant were made only after the defense counsel stated to the court that he had already advised his client the night before (when appellant first produced the tape) that there might be criminal penalties involved. When first presenting the tape to the court, defense counsel stated "we advised Mr. Holland that there might be some criminal problems with that if the State chose to go ahead and do it." The court thereafter advised the appellant that there could be criminal penalties involved. The court further made careful inquiry in regard to all these comments to Mr. Holland, stating specifically that affirmation by the court of his lawyer's own advice was not intended to scare the appellant, but simply to advise him of his rights. Mr. Holland affirmatively stated that he understood and that he wished to consult with his counsel. After consulting with his counsel, who advised him that it would be in his best interest to withdraw the tapes, the appellant decided to withdraw the tapes. Both defense counsel and appellant again affirmed before the court that the withdrawal was voluntary and not as the result of any coercion, and at that point the *39 court allowed the tape to be withdrawn and the trial proceeded.
In support of his position, appellant cites a line of cases which make clear that substantial interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant. When such a violation of due process rights occur, a court must reverse the conviction without regard of prejudice to the defendant. Threats against witnesses are intolerable.
In the present case, however, after Holland had been advised by defense counsel that it would be to his best interest to withdraw the tapes, he did so. The trial judge specifically inquired of defense counsel whether they were doing this because of any coercion; and both defense counsel and appellant responded in the negative. Furthermore, the line of cases cited by the appellant are distinguishable because nothing in the record suggests that appellant's right to present the testimony of any witness was interfered with by the state. Appellant offered several defense witnesses who testified that appellant was involved in the business of trading gemstones for real estate. Moreover, appellant was not precluded from offering testimony concerning his version of the conversation that took place on July 5, and in fact took the stand and testified concerning such conversation. While this testimony might have been corroborated by the tape recording that appellant withdrew, the appellant was not precluded from testifying as to any relevant evidence including his version of the conversation.
Appellant here seems to confuse the laying of a predicate for admission of physical evidence with actual witnesses' testimony at trial. It is clear that the trial court was correct in ruling that the tape recording, to be admissible, would have to be properly authenticated. Monroe v. United States, 234 F.2d 49 (D.C. Cir.1956), cited in Gomien v. State, 172 So.2d 511 (Fla. 3d DCA 1965); Allen v. State, 492 So.2d 802 (Fla. 1st DCA 1986); United States v. Lively, 803 F.2d 1124 (11th Cir.1986).
Appellant, at the hearing before the court, chose not to attempt to authenticate and thereby lay a predicate for the admission of the tape. The court ascertained that this decision was not based on coercion. The relinquishment by the defendant of any constitutionally protected right must be voluntary in the sense that it was the product of a free and deliberate choice, rather than intimidation, coercion and deception. The record in this case negates appellant's assertion that the decision to withdraw the tape was a result of coercion by the court or the state. Appellant's rights were not violated.
As to the entrapment issue, the appellant filed a motion to dismiss the information based upon entrapment, and a Notice of Intent to Rely on the Defense of Entrapment. Appellant contends that the trial court committed reversible error by failing to hear and rule on appellant's motion to dismiss as a matter of law, under the threshold objective test announced in Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). This contention is devoid of merit. A ruling by the trial court as to the objective test for entrapment was made.
The threshold objective test to determine if the defendant was entrapped as a matter of law focuses upon whether the police have resorted to impermissible techniques to obtain a conviction. This procedure recognizes that there may be official conduct which is so egregious as to impugn the integrity of the court so that the predisposition of the defendant becomes irrelevant. Lusby v. State, 507 So.2d 611 (Fla. 4th DCA 1987); State v. Eichel, 495 So.2d 787 (Fla. 2d DCA 1986). If the trial court determines that the threshold objective test has been met, then the subjective test which focuses upon the predisposition of the defendant is a question of fact for jury determination. Although the court did not rule on the motion to dismiss as such, at the close of all the evidence the defense counsel moved for judgment of acquittal and argued "in light of the fact that entrapment is a jury issue, the defendant would state that the evidence would not *40 overcome the basic entrapment defense as set forth by Mr. Holland." The court, in denying the motion, commented that there was ample evidence from which the jury could conclude that Mr. Holland had not established the defense of entrapment. This clearly suggests that the court, by denying defendant's motion for judgment of acquittal, found that the threshold test for entrapment had been met. We find no error in the trial court submitting the entrapment issue to the jury.
AFFIRMED.
ANSTEAD and GLICKSTEIN, JJ., concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).