[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 30, 2010
JOHN LEY
CLERK

No. 09-13073
Non-Argument Calendar
_____

D. C. Docket No. 08-00121-CR-A-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES R. RUSSELL,
a.k.a. JR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(April 30, 2010)

Before EDMONDSON, BIRCH and ANDERSON, Circuit Judges.

PER CURIAM:

James Russell appeals his convictions for one count of conspiracy to

distribute cocaine and cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 841(a)(1) and 846, and four counts of use of a phone in facilitation of a drug crime, in violation of 21 U.S.C. § 843(b).  On appeal, Russell raises four issues.

First, Russell argues that there was insufficient evidence to sustain his convictions for two reasons: the government's primary witness—Marcus Jenkins—was "incredible as a matter of law"; and the evidence only established a buyer-seller relationship, not a conspiracy.

Second, he argues that the district court abused its discretion by refusing to give a jury instruction defining a buyer-seller relationship and distinguishing it from conspiracy.  Russell further argues that the conspiracy instruction given did not adequately cover the buyer-seller relationship and prejudiced his ability to defend himself.

Third, Russell argues that the district court abused its discretion in denying his motion for a mistrial because the prosecutor invaded the province of the jury and improperly vouched for witness Marcus Jenkins by identifying the voices on a recorded audiotape.

Finally, Russell contends that the district court abused its discretion in denying his motion for a new trial because Marcus Jenkins underwent a psychological examination at his counsel's request, Russell was not made aware of

this until after trial, and therefore was not able to use this information for impeachment purposes. Russell also argues that the district court should have granted a new trial because it used an improper verdict form, which did not offer the jury the option of finding him responsible for less than 5 grams or less than 50 grams of crack cocaine.

I.      Sufficiency of the Evidence

Denial of a motion for acquittal based on sufficiency of the evidence is reviewed *de novo*, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict." *United States v. Schier*, 438 F.3d 1104, 1107 (11th Cir. 2006). To sustain a conviction under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that: (1) a conspiracy existed; (2) the defendant knew of the essential objectives of the conspiracy; and (3) the defendant knowingly and voluntarily participated in the conspiracy. *United States v. Calderon*, 127 F.3d 1314, 1326 (11th Cir. 1997). The government can show the existence of such an agreement via circumstantial evidence, which includes inferences based on the conduct of the alleged participants in the scheme. *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005).

To sustain a conviction under 21 U.S.C. § 843(b), the government must

prove beyond a reasonable doubt that the defendant knowingly and intentionally used a communications facility, e.g., a telephone, to facilitate the commission of a narcotics offense. *United States v. Rivera*, 775 F.2d 1559, 1562 (11th Cir. 1985). To prove facilitation, "the [g]overnment must show that the telephone call comes within the common meaning of facilitate—'to make easier' or less difficult, or to assist or aid." *Id.* Where a defendant is not convicted of the underlying drug charge, a conviction under § 843(b) may not be sustained because there is no felony to facilitate. *United States v. Arrow*, 739 F.2d 549, 550 (11th Cir. 1984).

Russell argues that the evidence was insufficient to sustain his convictions because Marcus Jenkins, the government's primary witness, was incredible as a matter of law because he admitted to providing inconsistent statements at trial, failed to comply with the terms of his release while on probation, and gave testimony that was contradicted by a defense witness. Although credibility determinations are generally left to the jury, we have recognized that a jury verdict can be disturbed on appeal if a witness's testimony is "incredible as a matter of law." *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009), *cert. denied*, _U.S._, 130 S. Ct. 561 (2009) (internal quotation omitted). Testimony is only incredible as a matter of law if it relates to "facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature."

4

*Flores*, 572 F.3d at 1263 (internal quotation omitted).

Marcus Jenkins' testimony related to neither. The substance of Jenkins' testimony was that he had known Russell for fifteen years and that they had dealt drugs together on many occasions. Jenkins also identified Russell's voice on numerous recorded telephone conversations discussing the purchase and sale of cocaine. Far from testifying to facts not observed or events contrary to the laws of nature, Jenkins merely presented the jury with a standard issue of witness credibility. A jury is always free to draw between reasonable interpretations of the evidence presented at trial. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007).

Russell further argues that the evidence was insufficient to sustain his conspiracy conviction because it only showed the existence of a pure buyer-seller relationship and not a conspiracy. This claim is also without merit. We have recognized that where "the buyer's purpose is merely to buy, and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement, no conspiracy has been shown." *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993) (internal quotation omitted). However, "[w]hile the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement, an

5

agreement to distribute drugs may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to a purchaser." *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005) (internal quotations omitted).

The evidence adduced against Russell at trial was more than sufficient for a jury to find the existence of a conspiracy, as opposed to a simple buyer-seller relationship. Jenkins testified that he had sold or purchased cocaine to or from Russell on numerous prior occasions, and the jury heard the transcripts of five telephone conversations between Jenkins and Russell. During these conversations, Russell and Jenkins discussed the purchase of large quantities of cocaine from Jenkins' uncle, who trafficked cocaine from Texas to Alabama from a source in Mexico. Another witness, Draper Carter, corroborated Jenkins' identification of Russell's voice on the recording and testified to a drug negotiation he witnessed between Jenkins and Russell during the course of the conspiracy. The jury also heard recordings of multiple conversations between Jenkins and his uncle, during which they discussed collecting $10,000 from Russell for a purchase a large quantity of cocaine. We have held that similar evidence demonstrating a history of drug transactions between two individuals, coupled with evidence that they worked together to arrange a sale to a third party was sufficient to sustain a conspiracy

6

conviction. *Beasley*, 2 F.3d at 1560–61. The evidence of repeated narcotics transactions between Russell and Jenkins was sufficient to support an inference of both "a prior or contemporaneous understanding," *id.* at 1560, and a "continuing relationship" as opposed to a simple buyer-seller relationship, *Thompson*, 422 F.3d at 1292. Therefore, we affirm the jury's conviction of Russell for conspiracy to distribute cocaine. Furthermore, because the evidence was sufficient to support Russell's conspiracy conviction and showed that Russell used the telephone to facilitate the commission, we also uphold Russell's conviction for the unlawful use of a communications facility under 21 U.S.C. § 843(b).

II.     Jury Instruction

A district court's refusal to give a proposed jury instruction is reviewed for abuse of discretion. *United States v. Dean*, 487 F.3d 840, 847 (11th Cir. 2007). Reversal of convictions based on a jury instruction error is appropriate only where an erroneous instruction leaves us "with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *United States v. Mulford*, 267 F.3d 1241, 1245 (11th Cir. 2001) (internal quotation omitted). Under this standard, we examine the jury instructions to determine if, taken as a whole, the jury was sufficiently instructed to understand the issues and was not misled. *Id.* "If the charge to the jury adequately and correctly covers the substance of the

7

requested instruction, there is no reversible error." *United States v. Lively*, 803 F.2d 1124, 1128 (11th Cir. 1986).

Russell argues that the district court abused its discretion in denying his request for a buyer-seller jury instruction because the jury instruction for conspiracy did not encompass the buyer-seller relationship. We disagree. Russell's case is controlled by our decision in *Lively*. In that case, we held that a conspiracy instruction, tracking almost verbatim the instruction given in Russell's case, sufficiently addressed the substance of the requested buyer-seller instruction and the district court did not abuse its discretion in denying the defendant's proffered instruction. *Id.* at 1129. Both the instruction in *Lively* and the instruction given here stated that for a defendant to be guilty of conspiracy two or more persons must come "to a mutual understanding to try to accomplish a common and unlawful plan"; that the defendant must "knowingly" and "willfully" enter the conspiracy; and that "a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator." *Id.* Therefore, we affirm Russell's conviction on this ground.

III.   Mistrial

The denial of a motion for a mistrial is reviewed for abuse of discretion.

*United States v. Mendez*, 117 F.3d 480, 484 (11th Cir. 1997). The "decision to grant a mistrial lies within the sound discretion of the trial judge since he or she is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *Id.* (internal quotation omitted). Russell argues that the district court abused its discretion in denying his motion for mistrial because the prosecutor improperly vouched for a government witness by identifying for the jury the voices on one of the recorded telephone conversations.

Allegations of prosecutorial misconduct are mixed questions of law and fact and are reviewed *de novo*. *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997). In reviewing allegations of prosecutorial misconduct, we must decide "(1) whether the challenged comments were improper and (2) if so, whether they prejudicially affected the substantial rights of the defendant." *United States v. Verbitskaya*, 406 F.3d 1324, 1336–37 (11th Cir. 2005). In reviewing a claim of improper vouching, we examine whether "(1) the prosecutor placed the prestige of the government behind the witness by making explicit personal assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony." *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1177–78 (11th Cir. 2006).

We find no merit in Russell's contention that the prosecutor's statements were improper, prejudicial, or that they constituted improper vouching. In *Arias-Izquierdo*, we dismissed a defendant's improper vouching claim because the prosecutor, in identifying the defendant in a photograph, relied on evidence that was already before the jury. Therefore, the jury itself could decide whether or not to believe the prosecutor on the basis of this evidence. *Id.* at 1778. Similarly here, the prosecutor—in referring to a recording of a telephone call the jury was about to hear played for a second time—identified the voices thereon as Jenkins had previously identified them. The jury was entitled to determine whether the recording supported this testimony, whether Jenkins was credible, and whether the voices could have been persons other than those identified by Jenkins. The prosecutor did not implicate any evidence beyond what was presented to the jury in making this statements, and his mere identification of the speakers did not amount to an explicit personal assurance of the witness's credibility. *See id.* at 1177–78. Moreover, the district court issued a curative instruction in this case, reminding the jury that attorney statements were not evidence and only the jury could decide whose voices were on the tape in question. When a court gives the jury a limiting instruction, the jury is presumed to follow it. *United States v. Chirinos*, 112 F.3d 1089, 1100 (11th Cir. 1997) (quotations omitted). In sum, we conclude that

10

because the prosecutorial statement challenged by Russell here was an isolated comment and the court issued a curative instruction, any error did not prejudice the outcome of the case.

IV. New Trial

Denial of a motion for a new trial is reviewed for abuse of discretion. *United States v. Day*, 405 F.3d 1293, 1298 n.6 (11th Cir. 2005). "A new trial is warranted based upon circumstances coming to light after trial only if the following five part test is satisfied: (1) the evidence was in fact discovered after trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence was not merely cumulative or impeaching; (4) the evidence was material; and (5) the evidence was of such a nature that a new trial would probably produce a different result." *United States v. Lee*, 68 F.3d 1267, 1273 (11th Cir. 1995). "The failure to satisfy any one of these elements is fatal to a motion for a new trial." *United States v. Thompson*, 422 F.3d 1285, 1294 (11th Cir. 2005).

Russell argues that the district court erred in denying his motion for new trial on two grounds: first, because he was not informed of Jenkins' mental health evaluation until after trial and therefore was unable to use this information for impeachment purposes; and second, because the district court used an improper verdict form, without the option of finding him responsible for less than 5 grams or

11

less than 50 grams of crack cocaine. Russell cannot satisfy his burden for a new trial with respect to either of these grounds.

First, the mental evaluation of Marcus Jenkins did not find that he was suffering from a mental defect, so Russell cannot show that this newly discovered evidence is material to his guilt or punishment. *See Lee*, 68 F.3d at 127. Second, Russell has not indicated that the fact that Jenkins had a mental health evaluation would be used for anything other than impeachment purposes. *See id.* Finally, Russell has not shown that Jenkins' mental health examination would in any way have changed the outcome of the case. *See id.* Therefore, he has failed to satisfy at least three of the five requirements for a new trial.

Regarding the allegedly improper verdict form, although the verdict form did not specify every quantity set forth by statute,[1] Russell has not demonstrated that this affected the jury's decision to find him guilty, and any sentencing issues were alleviated by the district court's decision to hold him responsible for the smallest quantity of crack cocaine. The district court did not abuse its discretion in denying Russell's motion for a new trial.

---

[1] Under 21 U.S.C. § 841, possession of powder cocaine is separated into three categories based on quantities: 5 or more kilograms; between 500 grams and 5 kilograms; and fewer than 500 grams. 21 U.S.C. §§ 841(b)(1)(A)(ii)(II), (b)(1)(B)(ii)(II), and (a)(1). Under the same statute, possession of crack cocaine is separated into three categories based on quantities: 50 grams or more; between 5 and 50 grams; and fewer than 5 grams. 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii), and (a)(1).

**AFFIRMED.**[2]

---

[2] Appellant's request for oral argument is denied.