[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14297

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

GIOVANI OROZCO RAMIREZ,
a.k.a. Yovani,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cr-00185-LMM-JEM-1

_____

Before JILL PRYOR, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

A jury convicted Giovani Orozco Ramirez of several crimes including conspiring to possess methamphetamine with intent to distribute, possessing methamphetamine with intent to distribute at a premises where minors were present, and being in possession of a firearm as a noncitizen unlawfully present in the United States. On appeal, he challenges these convictions. After careful consideration, we affirm.

**I.**

In March 2017, Raul, a confidential source working for the Drug Enforcement Administration, arranged to purchase a large quantity of methamphetamine from a person connected with a drug trafficking organization in Mexico. To set up the purchase, Raul was given the phone number of an individual in Atlanta. That individual turned out to be Ramirez.

Raul and Ramirez met in person twice about the transaction. At the initial meeting, which lasted approximately ten minutes, they agreed to set up another meeting at which Ramirez would show Raul a one-kilogram sample of methamphetamine.

Approximately one week later, Ramirez and Raul met for a second time. By the second meeting, Raul had arranged, through his contact, to purchase 50 kilograms of methamphetamine. Before the meeting, law enforcement officers surveilled Ramirez's home;

they saw that when Ramirez left for the meeting with Raul, he was carrying an orange bag. At the meeting, Ramirez showed Raul a one-kilogram sample of methamphetamine. He explained that he could not deliver 50 kilograms of methamphetamine because he currently had only 22 kilograms. During the meeting, Ramirez called his supplier to try to find more methamphetamine. He then tried to persuade Raul to accept the 22 kilograms, stating that he would be able to get the rest the next day. He also told Raul that "the people" were starting not to trust Raul because of the "long back and forth" to arrange the drug transaction. Doc. 239 at 110.[1] The meeting ended with Raul saying he would let Ramirez know whether he would purchase the 22 kilograms.

After the meeting, Ramirez drove home. The law enforcement officers conducting surveillance saw him carry the orange bag inside. They continued to watch the house while other officers obtained a search warrant for the premises.

Approximately four hours after Ramirez met with Raul, law enforcement officers executed a search warrant at his house. At the time of the search, Ramirez, his wife, another man, and four children were present. When officers entered the home, they saw that it had no electricity.

When officers searched the house, they found drugs and firearms in several places. In a crawl space under the basement, they discovered 21 individually wrapped packages, each containing one

---

[1] "Doc." numbers refer to the district court's docket entries.

kilogram of methamphetamine. In the garage, they found a loaded firearm on top of a lunchbox. Approximately one kilogram of heroin was hidden inside the lunchbox.

Officers also found drugs and guns in other places in the house. In a basement bedroom, they spotted the orange bag that Ramirez had brought to his meeting with Raul. Inside the bag was one kilogram of methamphetamine. Next to the bag was a loaded firearm. In a nearby closet, officers found a shoebox containing heroin and cocaine. In that closet, officers also discovered two loaded firearms, approximately $57,000 in cash, and ammunition. And in an upstairs bedroom closet, officers found another firearm.

During the search, officers spotted a notebook that appeared to be a drug ledger. One entry, dated between Ramirez's two meetings with Raul, stated that "they brought me 22 pieces," apparently referring to the 22 kilograms of methamphetamine found inside the house. *Id.* at 46.

After executing the search warrant, officers contacted the Georgia Division of Family & Children Services (DFACS) about the children who were present at the home. They reached out to DFACS because of the condition of the home and because of the guns and drugs they had found. A DFACS employee arrived on the scene and authorized the officers to turn the children over to a family member.

A grand jury subsequently indicted Ramirez, charging him with several crimes including conspiring to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846

(Count One); possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count Two); possessing with intent to distribute methamphetamine on a premises where an individual who was under the age of 18 was present or resided, in violation of 21 U.S.C. § 860a (Count Three); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four); and possession of a firearm by a noncitizen unlawfully present in the United States, in violation of 18 U.S.C. § 922(g)(5) (Count Five). Ramirez pleaded not guilty and proceeded to trial.

At trial, the government presented testimony from several witnesses. Raul described his meetings with Ramirez. Law enforcement officers testified about watching Raul's meetings with Ramirez and what they found when they searched Ramirez's house. One of the officers testified that four small children were present at the home during the search. The government's evidence included a photograph taken during the search that depicted an officer with the four children. It showed that one of the children was an infant.

After the government rested its case, Ramirez moved for a judgment of acquittal. He argued that he was entitled to a judgment of acquittal on Count Three, which charged him with possessing methamphetamine with intent to distribute on a premises where a child was present or resided, because the government failed to introduce evidence of any of the children's ages. The court rejected this argument, explaining that because the photograph

showed that one of the children was an infant, a factfinder could infer that a child under the age of 18 was present.

In his motion, Ramirez also raised a constitutional challenge to Count Five, which charged him with possessing a firearm as a noncitizen unlawfully present in the United States. He argued that this statute was unconstitutional but acknowledged that binding precedent foreclosed his challenge. The district court rejected this argument as well.

The jury returned a verdict finding Ramirez guilty of the charged crimes. The district court ultimately imposed a total sentence of 300 months. This is Ramirez's appeal.

**II.**

Generally, we "review *de novo* whether there is sufficient evidence in the record to support a jury's verdict in a criminal trial, viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). The evidence is "sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.* at 1285 (internal quotation marks omitted).

But when a defendant raised challenges to the sufficiency of the evidence in the district court but not the specific sufficiency challenge that he argues on appeal, we review for plain error. *United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016). To show plain error, a defendant must establish (1) there was error, (2) that

was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).

We generally review *de novo* the constitutionality of a statute. *Id.*

## III.

On appeal, Ramirez raises three challenges to his convictions, arguing that (1) there was insufficient evidence to support his drug conspiracy conviction, (2) there was insufficient evidence to support his conviction for possessing with intent to distribute methamphetamine on a premises where a minor was present, and (3) the statute prohibiting noncitizens unlawfully present in the United States from possessing firearms is unconstitutional under the Second Amendment. We address each issue in turn.

## A.

We begin with Ramirez's challenge to his conspiracy conviction. Federal law prohibits an individual from conspiring to possess with intent to distribute a controlled substance. 21 U.S.C. §§ 841, 846. To convict, the government must show "an agreement between the defendant and one or more persons" and that the object of the agreement was "to do either an unlawful act or a lawful act by unlawful means." *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998). To establish a conspiracy, the government must "prove a meeting of the minds to achieve the unlawful result." *United States v. Arbane*, 446 F.3d 1223, 1229 (11th Cir. 2006). The

government cannot carry its burden by showing only that the defendant was working with a confidential informant because "it is well-settled that a person cannot conspire with a government informer who secretly intends to frustrate the conspiracy." *United States v. Lively*, 803 F.2d 1124, 1126 (11th Cir. 1986).

Ramirez argues that the government failed to introduce sufficient evidence of a conspiracy because it showed that he conspired only with Raul, a confidential informant who did not intend to carry through on the conspiracy. Because he raises this issue for the first time on appeal, we review for plain error only.

We conclude that there was no error. A reasonable factfinder could have found that the government established beyond a reasonable doubt that Ramirez reached an agreement with his supplier to possess with intent to distribute methamphetamine. The evidence of this conspiracy included that between Ramirez's first and second meetings with Raul, the supplier told him that Raul had arranged to purchase 50 kilograms of methamphetamine. Then, during the second meeting, when Ramirez did not have enough methamphetamine, he called the supplier to discuss what to do. And he mentioned the supplier when he warned Raul that "the people" were starting not to trust Raul. Doc. 239 at 110. It's true that the jury didn't hear evidence of the supplier's name. But the government did not need to submit into evidence the supplier's name to establish that a conspiracy existed between the supplier and Ramirez. *See United States v. Carcaise*, 763 F.2d 1328, 1331 & n.6 (11th Cir. 1985) (concluding that there was sufficient evidence of

conspiracy based on defendant's references to "the guy," "my friend," and "these people"). Accordingly, we conclude that Ramirez's challenge to his conspiracy conviction fails.

## B.

We next turn to Ramirez's challenge to the sufficiency of the evidence for his conviction for possessing with intent to distribute methamphetamine at a premises where children under the age of 18 were present. He argues that there was insufficient evidence because there was no evidence of the children's ages.

We disagree. The evidence at trial included the photograph of the four children who were in the home at the time of the search. That photograph clearly showed that one of the children was an infant who needed to be held in arms. Based on the photograph alone, a reasonable factfinder could have found that the evidence established beyond a reasonable doubt that at least one of the children was under the age of 18. We thus conclude that Ramirez's challenge to this conviction also fails.

## C.

We now address Ramirez's constitutional challenge to his conviction for possessing a firearm as a noncitizen unlawfully present in the United States. A federal statute bars noncitizens unlawfully in the United States from possessing firearms. *See* 18 U.S.C. § 922(g)(5)(A). Ramirez argues that this statutory prohibition runs afoul of the Second Amendment. But we have held that this prohibition is "consistent with the Second Amendment's text and history" and "passes constitutional muster." *United States v. Jimenez-*

*Shilon*, 34 F.4th 1042, 1050 (11th Cir. 2022). Indeed, Ramirez concedes that our precedent forecloses his challenge. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) ("Under the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court en banc or by the Supreme Court." (internal quotation marks omitted)). Accordingly, we affirm his conviction on the firearm charge.

**AFFIRMED.**