**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lorentz G. OPDAHL, Defendant–Appellant.**

**No. 89–7823.**

United States Court of Appeals, Eleventh Circuit.

May 13, 1991.

Lowell H. Becraft, Jr., Huntsville, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., Bill L. Barnett, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and PECKHAM *, Senior District Judge.

EDMONDSON, Circuit Judge:

Defendant appeals his conviction for conspiring to bribe an official of the Internal Revenue Service (IRS). Among his attacks on appeal, defendant objects to the district court's refusal to instruct the jury on the legal authority of an IRS official to reach a "compromise" with a delinquent taxpayer to settle the taxpayer's disputed liability. Defendant claims that, in the light of the evidence, the instruction was central to the defense theory that defendant intended the cash payments he made to an undercover agent, who was posing as an IRS official, to be a legitimate monetary settlement of his tax liability. We agree, and accordingly we REVERSE defendant's conviction and REMAND the case for a new trial.

I.

Defendant Lorentz G. Opdahl was one of several persons charged as a result of an undercover operation begun in 1986 by the Birmingham office of the IRS. The investigation featured IRS Inspector William Cooper, who posed undercover as an IRS official willing to accept payments from delinquent taxpayers.

At defendant's trial, agent Cooper testified that, during a meeting at a Birmingham motel in July 1987, Cooper was told by Robert A. Moussallem, Opdahl's codefendant, that Opdahl needed help with more than $1.2 million in back taxes. Moussallem had already paid agent Cooper $10,000

---

* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation.

in cash to dissolve an IRS investigation of Moussallem. Moussallem mailed Opdahl's tax information to agent Cooper in August 1987, and Cooper testified at trial that from these documents he determined that Opdahl owed $1,217,440.01 in taxes.

At trial, the government introduced into evidence the following portion of a conversation between Opdahl and agent Cooper during their first meeting, at a motel in September 1987:

COOPER: Uh, I'm an, I'm an employee of the Internal Revenue Service in Birmingham, Alabama, in a responsible position. I can get things done. Uh, Bob is not my name. My name is something else; we just use Bob for the sake of convenience. Uh, I have done this sort of thing with [Moussallem] on a couple of other occasions, and, uh, we've had some success doing it but I'm very careful about doing things. That's the reason we're having this meeting. I like to meet people and talk with 'em and get a feel for, you know, what their real problem is.

During this conversation, Opdahl told Cooper that he wanted his tax liability problem to be "cleared up."

On cross examination, Cooper conceded that during his meeting with Opdahl, he never told Opdahl that any payments Opdahl might later make to Cooper would be bribes or that Cooper would keep any of the money for himself. Cooper also testified that his regular method during the course of his investigations was to approach delinquent taxpayers and tell them that they could "make payments to me to compromise their tax liabilities." Indeed, Cooper testified at trial that he told Opdahl during their meeting, "We've had different cases on master recordings. And most of the time, what's happened, we've wound up just making an out-of-pocket settlement on the case. But that's generally what has happened. And it's going to get more and more that way now." Cooper further testified that he told Opdahl, "They're going to give settlement authority all the way down to the revenue agent level now."

In October 1987, Moussallem told agent Cooper that Opdahl wanted to "get rid" of his taxes; and Cooper responded that he would handle Opdahl's tax problems and charge Opdahl ten percent of the total amount of taxes, interest, and penalties owed. In November 1987, Moussallem met Cooper in a motel parking lot and delivered $120,000 in cash (with no receipts) on Opdahl's behalf, although Opdahl later told IRS investigators that he had given Moussallem more than $289,000 in a series of payments to transfer to agent Cooper.

In June 1988, Cooper called Opdahl and thanked Opdahl for the money and for "taking care of me." Agent Cooper told Opdahl that Opdahl "got services for his money" and that the tax liability had been eliminated. Opdahl expressed his relief that the problem was resolved.

IRS inspectors testified at trial that they confronted Opdahl in February 1989 and that Opdahl initially denied any wrongdoing, claiming that the payments to agent Cooper were part of a legitimate settlement of his tax liability. The inspectors testified that, in the course of questioning, however, Opdahl admitted that he had acted wrongly. No recordings were made of Opdahl's conversation with the inspectors. On cross examination by defense counsel, one of the inspectors said that Opdahl had told them that he had not owed the IRS $1.2 million in taxes; instead, Opdahl told them that he had sold a business he owned for $1.2 million.

Opdahl and Moussallem were indicted and tried together; the jury deliberated for three days and, after initially indicating deadlock, convicted both Opdahl and Moussallem of conspiracy to bribe a public official, in violation of 18 U.S.C. § 371. The jury also convicted Moussallem of bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(A).[1] The jury acquitted Opdahl of the substantive bribery count.

## II.

Defendant asserts on appeal that, through a series of rulings at trial, the

---

1. Moussallem was killed before sentencing; his convictions have been vacated.

district judge prevented defendant from presenting to the jury his main theory of defense. In his opening statement, counsel for defendant said that he planned to prove that defendant owed much less money to the IRS than the government alleged, that there was a dispute between defendant and the IRS over how much defendant owed, that his payments to the undercover agent exceeded defendant's actual tax liability, and that defendant intended the payments as a "compromise" or "settlement" of the tax dispute. Defendant claims that he made the payments to avoid the costs of litigating the disputed tax liability arising from defendant's sale of a business.

▉▉▉ Defendant specifically challenges the following district court rulings that defendant claims foreclosed his theory of defense: (1) exclusion from evidence of testimony from defense experts about defendant's actual tax liability, (2) refusal to instruct the jury on the legal authority of IRS officials to enter into tax liability settlements with taxpayers, (3) refusal to in-

struct the jury on the legal significance of an "assessment" of taxes owed. We address only the second issue, the district court's refusal to deliver a requested "theory of defense" instruction to the jury.[2]

The district court's refusal to deliver a jury instruction requested by defendant constitutes reversible error if the instruction "(1) is correct, (2) is not substantially covered by other instructions which were delivered, and (3) deals with some point in the trial so 'vital' that the failure to give the requested instruction seriously impaired the defendant's ability to defend." *United States v. Lively,* 803 F.2d 1124, 1125–26 (11th Cir.1986).

Defendant requested that the district judge instruct the jury on the legal authority of IRS officials and taxpayers to enter into monetary settlements to resolve disputed tax liability. The proffered instruction, which tracks 26 C.F.R. § 301.7122–1,[3] reads as follows:

---

**2.** Because we conclude that the district court committed reversible error by refusing defendant's requested jury instruction on the authority of IRS officials to enter into liability settlements with delinquent taxpayers, we need not reach defendant's remaining claims.

As the issue may emerge again on retrial, however, we note that a good argument can be made that expert testimony and other evidence regarding defendant's tax liability at the time of the alleged bribe is relevant to defendant's theory of the case. The district judge excluded the proffered testimony because he concluded that defendant failed to establish an adequate factual predicate and because the testimony was irrelevant. As the district judge noted when he made his ruling, a hindsight conclusion by such experts about defendant's tax liability does not *prove* that defendant knew at the time that he owed significantly less than $1.2 million. But such evidence might well be probative at least to demonstrating that a reasonable, informed person would have concluded that defendant owed much less than the government alleges. To the extent that such evidence makes it more likely that defendant could reasonably have concluded likewise, the testimony might be seen to support defendant's theory that the payments to agent Cooper were part of a compromise of his disputed liability.

Defendant raised one additional issue on appeal, not relating to his "compromise" defense. Defendant challenged the trial court's refusal to allow certain cross-examination on the issue of whether his codefendant Moussallem was en-

trapped by the government. Defendant did not raise entrapment as an issue in his own defense, but argued that, if the jury had concluded that Moussallem was entrapped, it would have been unable, or at least less likely, to convict Opdahl for conspiring with Moussallem. We doubt that this argument is sound in principle. The rule in this circuit is that the acquittal of coconspirators does not prevent an inconsistent verdict of guilty for a lone conspirator. *See United States v. Andrews,* 850 F.2d 1557 (11th Cir.1988) (en banc) (overruling *Herman v. United States,* 289 F.2d 362 (5th Cir.1961)). More important, the district judge was well within his broad discretion in finding the testimony in question to be irrelevant to any issue at trial, including entrapment. *See United States v. Russo,* 717 F.2d 545, 551 (11th Cir.1983).

**3.** The regulation does differ in one respect from the requested jury charge: instead of explicitly authorizing IRS "officials" to enter into such compromises, the regulation provides that "the Commissioner" may do so. The government has not challenged the requested instruction as an inaccurate representation of the law, however. In fact, the government's chief witness, agent Cooper, testified that IRS officials "all the way down to the revenue agent level" had authority to enter into tax liability settlements. *See also* 26 C.F.R. § 301.7701–9 (authorizing the Commissioner to "redelegate the performance" of functions delegated to the Commissioner by statute or regulation).

Even though it might be determined that a particular person owes a specific amount for federal income taxes, the law permits a party who owes the tax and officials within the Internal Revenue Service to enter an agreement or 'compromise' whereby the total amount of taxes due and owing may be compromised by the payment of a lesser, agreed sum. Such a 'compromise' may be made under one or both of the following circumstances:

(1) If there is a doubt as to the liability of the person in question for the full amount of the taxes alleged to be due and owing;

(2) If there is a doubt as to collectibility, in that the person in question lacks sufficient assets or means whereby the total tax obligation may be paid.

The district court refused to give the requested "theory of defense" instruction because he agreed with the government's characterization of the instruction as "inapposite" to the facts of the case.

Applying the analysis of *United States v. Lively*, we conclude first that the proposed instruction is a correct statement of the law, a conclusion unchallenged by the government. *See Lively*, 803 F.2d at 1125.

█ Second, defendant's theory that he believed the payments to be a legitimate settlement of his tax liability goes to defendant's intent, an issue covered only generally by the district court's instructions. After telling the jury that the object of the alleged conspiracy was to "corruptly give some[thing] of value to an employee of the IRS, ... with the willful intent to influence an official act," the district judge defined "corruptly" for the jury as follows:

An act is done corruptly if done voluntarily and intentionally, and with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means.

So, a person acts corruptly whenever he makes a willful attempt to persuade or influence the official action of a public official by an offer or payment of money or anything of value.

The motive to act corruptly is ordinarily a hope or expectation of either financial gain or other benefit to one's self or some aid or profit or benefit to another.

The district court's instruction on intent cannot be said to have "substantially covered" the theory of defense here. *See Lively*, 803 F.2d at 1125–26. It is not enough to instruct the jury that the requisite intent for conviction is to intend to accomplish "either an unlawful end or result, or a lawful end or result by some unlawful method or means." To cover defendant's theory adequately in this case, the district court needed to instruct the jury on what form, as a matter of law, such a "lawful end" or "lawful means" might take under defendant's interpretation of the facts.

Third, we find that the district court's failure to give the requested "theory of defense" instruction seriously impaired defendant's ability to defend. *See Lively*, 803 F.2d at 1125–26. As suggested above, the issue of what "lawful end" or "lawful means" defendant might have intended his actions to accomplish was the central theory of defense in this case. With no instruction as to the legality of monetary settlements reached between an agent and a taxpayer, the jury was left with no legitimate and lawful alternative explanation for defendant's actions.

The government challenges the requested instruction as "inapposite" to the facts of the case, arguing that Inspector Cooper, posing as an IRS official, did not in fact have lawful authority to enter into such a compromise with defendant. It is unclear whether the government is claiming that agent Cooper did not possess such authority because he was acting in an undercover capacity and was not in fact an ordinary IRS official, or because the facts clearly demonstrated that Cooper was accepting a bribe, not legitimately settling a taxpayer dispute. Neither contention justifies the district court's refusal to deliver the requested instruction, however.

Even assuming that Inspector Cooper had no lawful authority to settle taxpayer liability because he was acting as an undercover investigator, not a regular IRS offi-

cial,[4] the requested instruction was still a legitimate defense to the alleged conspiracy. Defendant's theory goes to the issue of whether defendant possessed the "corrupt" intent required by statute. As a result, it is Inspector Cooper's purported role as an IRS official, not his actual status as an internal investigator for the IRS, that is relevant to the issue of defendant's intent.

The government argues, and the district judge apparently agreed, that the facts of the case demonstrated that agent Cooper was accepting a bribe, not settling defendant's tax liability. As a result, the government contends, an instruction on the legal authority to settle disputed tax liability was "inapposite" and only served to highlight certain evidence. *See United States v. Silverman*, 745 F.2d 1386, 1399–1400 (11th Cir.1984) ("Calling a proposed instruction a 'theory of defense,' however, does not automatically force a court to give it.... The court may disregard a requested instruction that merely emphasizes a certain phase of the evidence.") (citations omitted).

■ The government's contention that the evidence overwhelmingly demonstrates that Cooper accepted a bribe, not a settlement, only begs the ultimate question. Even if there were more than enough evidence to convict defendant on the prosecutor's theory of the case, defendant's right to a jury instruction on the theory of his defense is not cancelled, as long as there is even a small amount of evidence in the record to support it. The law is clear that "the defendant 'is entitled to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence, even though the evidence may be weak, insufficient, inconsistent, or

of doubtful credibility.' " *Lively*, 803 F.2d at 1126 (quoting *United States v. Young*, 464 F.2d 160, 164 (5th Cir.1972)) (emphasis in *Lively* ).

■ The evidence in the record here supports the requested "theory of defense" instruction on the issue of compromise. As noted earlier, agent Cooper testified at trial that he never told Opdahl that he was a corrupt IRS official, that any payments Opdahl made constituted bribes, or that Cooper planned to keep any of the money for himself. In addition, Cooper testified that during the course of the investigation, he approached delinquent taxpayers and told them that they could "make payments to me to compromise their tax liabilities." Cooper also testified at trial that he told defendant, "We've had different cases on master recordings. And most of the time, what's happened, we've wound up just making an out-of-pocket settlement on the case. But that's generally what has happened. And it's going to get more and more that way now." Cooper further testified that he told Opdahl, "They're going to give settlement authority all the way down to the revenue agent level now."

While the countervailing evidence might substantially undercut the evidence supporting defendant's requested instruction, the task of weighing that evidence is properly left to the jury. The purpose behind jury instructions is to assist the jury in accomplishing that task by providing the relevant legal standards by which the jury may analyze the defendant's conduct. Because we conclude that the requested instruction satisfies the requirements of *United States v. Lively* and is adequately supported by evidence from the record, we conclude the district court's failure to in-

4. Agent Cooper testified that he did possess the legal authority to settle such tax disputes and that he told defendant as much:
   Q. And is it true that you have the ability to compromise claims; is that correct?
   A. Compromise claims?
   Q. Tax liability claims. Compromise—
   A. Yes, sir.
   Q. And now that we know that you actually told that to Mr. Opdahl, and that you say that it was truthful, you recall saying that earlier;

don't you—that you told Mr. Opdahl you have the right to compromise or settle claims, and that in fact, that was true; is that right?
   A. That I used the words claims?
   Q. Well, settle—
   A. Yes, sir.
   Q. —tax liability
   A. Yes.
   Q. And it was true; is that right?
   A. Yes.

struct the jury properly on the issue of "compromise" as it relates to defendant's intent was reversible error.

REVERSED and REMANDED for a new trial.