**UNITED STATES of America,**

v.

**Paul Jennings HILL.**

**No. 94–03118–RV.**

United States District Court,
N.D. Florida,
Pensacola Division.

Oct. 7, 1994.

Maureen Duignan, Maureen Duignan, P.A., Pensacola, FL, Roderick D. Vereen, Roderick D. Vereen, P.A., Miami, FL, for defendant.

Paul Jennings Hill, Pensacola, FL, pro se.

David Lee McGee, Asst. U.S. Atty., U.S. Dept. of Justice, Tallahassee, FL, for U.S.

## *MEMORANDUM OPINION*

VINSON, District Judge.

On September 28, 1994, I entered an order granting the government's motion *in limine* to exclude evidence offered by the defendant on the "necessity" or "justification" defense. At that time, the defendant had not identified any facts to support a necessity defense; however, my order pointed out that the government's motion would be reconsidered if the defendant did proffer sufficient evidence. As a result, the defendant was given an opportunity before trial to proffer evidence that the elements of the necessity defense could be substantiated at trial. Because the defendant's proffer was insufficient, the defendant's oral motion to reconsider the order granting the government's motion *in limine* must be denied.

■ As set out in my earlier order, to be entitled to a defense of necessity, a defendant must be able to show four essential elements:

(1) that he was faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) that there were no other legal alternatives to violating the law.

1. *See United States v. Schoon,* 971 F.2d 193, 197 (9th Cir.1991) ("The law could not function were people allowed to rely on their subjective beliefs

*United States v. Milligan,* 17 F.3d 177 (6th Cir.1994); *United States v. Aguilar,* 883 F.2d 662, 693 (9th Cir.1989); *United States v. Gant,* 691 F.2d 1159, 1162–63 (5th Cir.1982). In order to have the necessity defense submitted to a jury, the defendant must first produce or proffer evidence sufficient to prove the essential elements of the defense. *See United States v. Bailey,* 444 U.S. 394, 412 n. 9, 100 S.Ct. 624, 635 n. 9, 62 L.Ed.2d 575, 592 n. 9 (1980); *United States v. Montgomery,* 772 F.2d 733, 736 (11th Cir.1985). Instructions should be given on a theory of defense if there "is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Opdahl,* 930 F.2d 1530, 1535 (11th Cir.1991). Of course, if a necessary element of the defense is supported by no evidence at all, the defense should not be submitted to the jury.

■ The first element of the necessity test requires that the defendant choose the lesser of two harms. The government has argued that since abortion is legal, the defendant simply cannot meet this element. However, the harm that the defendant chooses to avoid does not necessarily have to be illegal, but it must be a legally recognizable or cognizable harm. *See United States v. Schoon,* 971 F.2d 193, 197 (9th Cir.1991). Since abortions are a constitutionally protected activity within certain parameters, there is no legally recognizable or cognizable harm for abortions within those parameters. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Planned Parenthood of Southeastern Penn. v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality opinion) (states can legislatively ban non-therapeutic abortions beginning at the point of viability of the fetus). Therefore, for purposes of the first element, the defendant was required to show that he held a reasonable and objective belief that abortions were being performed which were outside the protection of the Constitution and the law of the State of Florida.[1] The defendant's only called witness, Ms. Linda Taggart, the administrator of the Ladies' Center Clinic, testified that the

and value judgments in determining which harms justified the taking of criminal action.").

clinic had never performed abortions beyond the first trimester. Thus, the defendants presented no facts supporting the conclusion that the clinic had performed abortions that were not authorized under Florida law.[2] Since the abortions performed at the clinic were not shown to be outside the protection of the United States Constitution and Florida law, the defendant failed to meet his burden as to the first element.

The defendant must also show that he acted to prevent imminent harm. The defendant could show only that approximately twenty-five abortions were scheduled to be performed at the clinic on July 29, 1994, starting at 7:30 a.m. The defendant argued that when the shooting occurred, Dr. Britton was within feet of the clinic and that, but for the shooting, Dr. Britton would have immediately started performing abortions. Although the abortions could be considered "imminent," the defendant, as noted above, has failed to show that a single one would have been outside the protection of the Constitution and Florida law, so that it would be a "harm" for purposes of the necessity defense. As a result, the defendant did not meet his burden as to the second element.

The third element requires that the defendant reasonably anticipate a causal relationship between his act and the harm he seeks to avert. The defendant indicated that he was prepared to testify at trial that he was aware that the killing of Dr. David Gunn, an abortion provider, resulted in the Ladies' Center Clinic ceasing abortion services for five weeks. He suggested that he would be able to present other evidence showing that the death of Dr. Gunn caused other abortion providers to stop performing abortions. The defendant argued that because of his knowledge of such facts, he could reasonably anticipate that killing Dr. Britton would prevent

some abortions from occurring, and that there was a causal relationship. As with the first two elements, however, the defendant failed to demonstrate that a single one of the prospective abortions that would be, or were, prevented was a legally cognizable harm.

The final element requires the defendant to show that no legal alternatives existed to violating the law. Because the constitutional right to obtain an abortion was recognized by a decision of the Supreme Court of the United States, few legal alternatives exist for those seeking to make abortion completely illegal. Aside from reconsideration by the Supreme Court or an amendment to the Constitution, the constitutionally protected status of the abortion right will continue. Those attempting to exhaust legal alternatives in the anti-abortion field thus have few methods at their disposal. Unlike most political issues which generate widespread protest, this is not a matter which can be changed by Congress at any time. However, the defendant in his proffer has indicated that his goal was more narrow: he intended not to change the law, but to prevent abortions from occurring. The defendant referred to the numerous ways in which he and others who oppose abortion have tried to stop the providing of abortions.[3] He suggests that the inference must be that these alternative means have proven to be futile. However, he presented no evidence to indicate that, in light of the circumstances as they existed on July 29, 1994, the only way to prevent abortions from occurring at the Ladies' Center Clinic was to shoot Dr. Britton and his two escorts. There are legal alternatives far less severe and abhorrent than the action the defendant elected to take: killing Dr. Britton and Mr. Barrett, and injuring Mrs. Barrett with a shotgun.

**2.** In Florida, abortions performed after the twenty-fourth week of pregnancy are illegal, unless the life or health of the mother is at risk. § 390.001(2), *Fla.Stat.* (1991). Also, if an abortion is performed during viability, a person attempting to terminate the pregnancy must seek to deliver the fetus normally, unless the life or health of the mother is at risk. § 390.001(5), *Fla.Stat.* (1991). Although the defendant questioned whether the presumption of non-viability for fetuses during the first two trimesters was

medically correct, there was no evidence that viable fetuses had been, or were scheduled to be, aborted.

**3.** The methods referred to that the defendant used personally include talking to abortion providers, lecturing and presenting slide shows, demonstrating outside clinics, appearing on television and radio shows, picketing, preaching, and forming organizations to oppose abortion.

## CONCLUSION

Although I have discussed each of the elements separately, I do so only for the purpose of organization and clarity. The necessity defense is more than a checklist of elements. The overriding inquiry is whether the age-old common law defense of necessity applies to justify conduct that would otherwise constitute a crime. Does the abortion issue, regardless of how divisive it is, fall into the category of harms that could not have been anticipated when the other applicable laws were enacted? Is it a sudden, unexpected emergency that requires immediate action to avoid harm, thereby warranting drastic and illegal action? The answer to both these questions is plainly "no." Any attempted application of the necessity defense to these circumstances is too strained to fit its purpose. This is not a situation analogous to helping the prisoner escape a burning jail, or to destroying one house in order to keep the fire from spreading to other houses. The defense simply cannot be applied to justify averting acts that have expressly been declared by the highest court in the land to be constitutional and legally protected.

Therefore, I conclude that the defendant has failed to produce or proffer evidence sufficient to entitle him to present the necessity defense at his trial.

DONE AND ORDERED.