UNITED STATES of America,
Plaintiff–Appellee,

v.

Ana Dolores RUIZ, Jose Aviles, and William Perez, Defendants–Appellees.

No. 93–2242.

United States Court of Appeals,
Eleventh Circuit.

July 28, 1995.

**1152**

Robert N. Scola, Jr., G. Richard Strafer, H. Scott Fingerhut, Miami, FL, for appellants.

Adrian Castro, Tampa, FL, for William Perez.

Santo J. Volpe, Chicago, IL, for Jose Aviles.

Robert W. Genzman, U.S. Atty., Tamra Phipps, Joseph Ruddy, Asst. U.S. Atty., U.S. Attorney's Office, Tampa, FL, for appellee.

Before EDMONDSON and BARKETT, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

The government indicted Ana Ruiz, Jose Aviles, and William Perez for conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. This appeal followed the jury's guilty verdict as to all three defendants.[1] We find no merit in the arguments presented by Aviles and Perez, and affirm their convictions without opinion. *See* 11th Cir.R. 36–1. Ruiz asserts the district court erroneously refused her jury instruction on a mistake of fact defense. We agree and reverse her conviction.[2]

---

1. Charged also were Ana Ruiz' daughter, Alba Ruiz, and Angel Santana. The district court severed Santana's case prior to trial due to antagonistic defenses, and granted Alba Ruiz a judgment of acquittal at the close of the government's case.

## I. BACKGROUND

At trial the government presented evidence showing that Appellant Ruiz brokered the sale of seventy kilograms of cocaine by helping to arrange the ultimate meeting between the purchaser, Angel Santana, and the supplier, an undercover agent. Testimony revealed the following facts pertinent to this appeal.

On June 9, 1992, an undercover United States Customs agent, Victor Thompson, received a telephone call from a Colombian informant advising him to expect a beeper page from another man in Colombia named "Frank."[3] Frank contacted Agent Thompson shortly thereafter about purchasing seventy kilograms of cocaine that Thompson had "smuggled" to Tampa, Florida. Thompson insisted on negotiating a price with someone in the United States so Frank said he would have his United States representative call Thompson within a few days. Frank indicated the contact person would either be Roke Julio (a/k/a Angel Santana) or a woman named "Lamento" (a/k/a Ana Ruiz). Appellant Ruiz asserts, and the government does not deny, that Angel Santana was the ultimate purchaser of the cocaine.

After several telephone calls to Chicago and Miami, Agent Thompson spoke with Santana. The parties agreed to meet on June 15, 1992 at a Circle K convenience store on Bayshore Boulevard in Tampa. Thompson met Santana as planned. After the initial introductions Santana said he needed to take his family to a friend's house and that he would be right back to discuss the details of the buy. Thompson saw Santana enter a white, late-model Pontiac with two females and two children, who he later learned were Ana Ruiz, her daughter and two grandchildren. Thompson waited but Santana did not return to the Circle K that day.

Three days later Ana Ruiz called Agent Thompson using the code name of "Lamen-

---

2. Because we resolve the appeal on this basis, it is unnecessary to reach the other errors asserted by Ruiz.

3. "Frank" was Frank Burns, the husband of co-defendant Alba Ruiz and son-in-law of Appellant Ana Ruiz.

to." She told Thompson she worked for "Roke Julio" and wanted to meet with him to negotiate the purchase of the seventy kilos. After several calls back and forth, Ana Ruiz and her daughter met Thompson on Franklin Street in Tampa on June 22nd. From there Thompson had the women follow him to his warehouse, an undercover site, to discuss the transaction. At the warehouse, Thompson told them that he was in fact a drug dealer, that he conducted his deals at the warehouse, and that he had received 250 kilos in his last transaction. They discussed some details of the pending buy, including the price of $13,000 per kilo.

After several days of negotiations between Appellant Ruiz and Agent Thompson about how and where to complete the transaction, the controlled delivery of cocaine took place on July 1, 1992 at the undercover site. Thompson met Ana Ruiz and Alba Ruiz in front of a Chili's restaurant. Co-defendants Perez and Aviles were present, driving an Oldsmobile and a Nissan minivan to consummate the deal. Ana Ruiz, Perez, and Aviles followed Thompson to the warehouse. On arrival Aviles accessed $300,000 from a false compartment in the Oldsmobile. Perez and Aviles then sampled the cocaine, and Aviles loaded it into a false compartment of the minivan. At this point the three defendants were arrested. Alba Ruiz was arrested a short while later as she waited at Chili's for her mother to return. Later that same day Angel Santana was arrested after having fled Tampa for his home in Miami.

Ana Ruiz testified at trial that she became involved in this drug deal to help her son-in-law, Frank Burns, resolve a pending federal drug charge so that he could return to his family in the United States.[4] Ruiz said she believed Santana was working as a government informant based on his statements to her.[5] She testified she thought she was also assisting the government as an informant and, therefore, not committing a crime.[6] Ruiz did not receive compensation for her involvement.[7] Aviles similarly testified that Santana told him that he (Santana) was working with the "federals."

At the close of all the evidence, Ruiz requested that the jury be instructed on a mistake of fact defense to better define the pattern instruction on the term "willfully."[8]

---

4. Burns was arrested by an FBI special agent on March 27, 1991. After Burns was released on bond, he fled to Colombia and became a fugitive from justice.

5. In October of 1991, Ruiz drove Santana to a meeting and waited approximately three hours for him. After the meeting Santana confided to Ruiz that he was an informant working with an undercover FBI special agent. R5–20. According to Ruiz, when she approached Santana for assistance in securing Frank Burns' return to the United States, Santana told her that he would "speak with Frank, [and] tell him to get some people that have some business here and [ ] take care of the rest so that the government can give him a credit if [sic] Frank Burns can return to this country." R5–22. Santana was willing to do this because "he was going to be recompensed from the government." R5–22.

6. The prosecutor on cross-examination sought to establish that there were no witnesses to corroborate Ruiz' claim that she believed she was working, with Santana, for the government. We presume for the purposes of this appeal that there was no corroborating evidence.

7. She testified that the only benefit to her participation was "[t]he credit that Frank Burns was [to be] able to come to this country because Angel Santana was going to report immediately [to] these people that that was Frank's credit. Therefore, the government will reduce a little his punishment and he could return to this country." R5–42, 43. She stated this made sense to her because Burns had been arrested for only six kilos of cocaine and a seventy kilo deal would certainly weigh heavily in his favor to return to the United States. R5–43.

8. The court ruled that guidance on "willful conduct" was all that was required by law and gave the following instruction:

> The word "willfully" as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is with bad purpose either to disobey or disregard the law.

Ruiz requested the following supplemental instruction:

> An honest mistake of fact is a complete defense to the charge in the indictment because it is inconsistent with the existence of willfulness, which is an essential part of the charge.
> Such an honest mistake negates the criminal intent of a defendant when the defendant's acts would be lawful, if the facts were as she supposed them to be.
> The burden of proof is not on the Defendant to prove her honest belief of a mistaken fact, since she has no burden to prove anything.

The district court denied the instruction, stating that her theory was not a defense to the indictment and not justified by the facts. The jury returned a guilty verdict. The court denied Ruiz' motion for a new trial predicated on the failure to instruct the jury on the definition of "willfully" as contained in the indictment. This appeal ensued.

## II. DISCUSSION

■ A criminal defendant has the right to have the jury instructed on her theory of defense, separate and apart from instructions given on the elements of the charged offense. *United States v. Opdahl*, 930 F.2d 1530 (11th Cir.1991); *United States v. Lively*, 803 F.2d 1124 (11th Cir.1986). A trial court may not refuse to charge the jury on a specific defense theory where the proposed instruction presents a valid defense and where there has been some evidence adduced at trial relevant to that defense. *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983). The trial court is not free to determine the existence of such a defense as a matter of law. *Id.* The threshold burden is extremely low: "[T]he defendant ... is entitled to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence." *Perez v. United States*, 297 F.2d 12, 15–16 (5th Cir.1961) (emphasis added).[9] In deciding whether a defendant has met her burden, the court is obliged to view the evidence in the light most favorable to the accused. *United States v. Williams*, 728 F.2d 1402, 1404 (11th Cir.1984).

■ Ruiz' testified in her own behalf to prove her belief that she was assisting the government through Santana, who was, as far as she knew, also a government informant. She thus met the evidentiary burden.

■ The district court's refusal to deliver a requested instruction constitutes reversible error only if the instruction "(1) is correct, (2) is not substantially covered by other instructions which were delivered, and (3) deals with some point in the trial so 'vital' that the failure to give the requested instruction seriously impaired the defendant's ability to defend." *Opdahl*, 930 F.2d at 1533 (quotations and citation omitted).

■ This Court has recognized that a defendant who thought he was performing legitimate law enforcement activities may lack the necessary criminal intent where he reasonably believed he acted in cooperation with the government. *United States v. Juan*, 776 F.2d 256 (11th Cir.1985). Moreover, we have acknowledged that a defendant's "mistake of fact" may negate criminal intent, if believed by a jury properly instructed on the law, where the defendant did in fact engage in the conduct giving rise to the charged offense. *See Opdahl*, 930 F.2d at 1534–36; *United States v. Vicaria*, 12 F.3d 195, 198–99 (11th Cir.1994). We have reviewed the proposed instructions and conclude either one is a substantially correct statement of the law that should have been given in some form. *See United States v. Morris*, 20 F.3d 1111, 1116 n. 7 (11th Cir.1994).

The defense theory was not substantially covered by the instruction on "willfully," an element of the charged offense. The jury could have been misled by the pattern instruction. They were allowed to reach a verdict without the ability to acquit Ruiz, even if they believed her testimony, because she admitted to willfully participating in the drug deal to facilitate her son-in-law's return to the United States. The pattern instruction did not focus on the contention that criminal intent was negated by the defen-

A defendant whose actions are based on her honest belief that she was acting lawfully is not chargeable with willful criminal conduct—even if her belief was erroneous or mistaken. Alternatively, Ruiz requested that the court insert the following instruction after the instruction on "willfully":

> If you have a reasonable doubt as to whether the defendant acted in good faith, sincerely believing herself to be assisting the government, then she did not intentionally violate a known legal duty; that is she did not act "willfully," and that essential part of the offense would not be established.

9. This court has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

dant's honest but mistaken belief that the government, acting through Santana, had authorized the drug transaction. *See Opdahl,* 930 F.2d at 1534–36; *Vicaria,* 12 F.3d at 198–99. The pattern instruction as given failed to recognize that a series of unlawful acts may be intentionally, willfully, purposefully, and voluntarily committed without *criminal* intent. The jury should have been instructed "on what form, as a matter of law, [ ] a 'lawful end' or 'lawful means' might take under the defendant's interpretation of the facts." *Opdahl,* 930 F.2d at 1534.

The government disingenuously argues that denial of the instruction was harmless error because counsel was allowed to present the defense theory in closing argument. The jurors were instructed to be guided solely by the evidence and the court's instructions, and not by counsels' argument. The failure to give the requested instruction seriously impaired the defense because Ruiz' beliefs were critical to her entire theory. With no instruction on the legal effect of the erroneous belief that she was acting lawfully, in light of her admission to acting willfully, the jury was left with no legitimate and lawful alternative explanation for her conduct. *See id.*

### III.  CONCLUSION

For the foregoing reasons, the jury did not receive proper guidance for their deliberations. Accordingly, we REVERSE and REMAND the case for a new trial.