[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-11776
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 18, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00348-CR-IPJ-PWG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID MONTERA-BELTRAN,
a.k.a. David Montero-Beltran,
JULIO CESAR SANCHEZ-MORENA
a.k.a. Julio Martinez-Hernandez,
a.k.a. JoJo,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 18, 2008)

Before BIRCH, HULL and MARCUS, Circuit Judges.

PER CURIAM:

David Montera-Beltran and Julio Cesar Sanchez-Morena appeal from their

convictions and sentences for conspiracy to possess with intent to distribute five

kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, Montera-Beltran argues that the district court abused its discretion in failing to give his requested jury charge, and Sanchez-Morena argues that the district court erroneously enhanced his sentence: (1) from an offense level of 32 to 36, pursuant to U.S.S.G. § 2D1.1(c)(2); and (2) by an additional two points, pursuant to U.S.S.G. § 2D1.1(b)(1). After careful review, we affirm.

We review a district court's refusal to give a requested jury instruction for abuse of discretion. United States v. Richardson, 532 F.3d 1279, 1289 (11th Cir. 2008). We review the district court's interpretation of the sentencing guidelines de novo and its factual findings, such as determinations of drug quantities or firearm possession, for clear error. United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir. 2005); United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005); United States v. Geffrard, 87 F.3d 448, 452 (11th Cir. 1996). We will not find clear error unless we have a "definite and firm conviction that a mistake has been committed." United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation marks omitted).

First, we are not persuaded by Montera-Beltran's argument that the district court abused its discretion in failing to give his requested jury charge. "A criminal

defendant has the right to have the jury instructed on [his] theory of defense, separate and apart from instructions given on the elements of the charged offense." United States v. Ruiz, 59 F.3d 1151, 1154 (11th Cir. 1995). The defendant's burden of presenting evidence to obtain the instruction is "extremely low" and the district court must view the evidence in a light most favorable to the defendant. Id.

However, "[a] trial court is not bound to use the exact words and phrasing requested by defense counsel in its jury charge . . . ." United States v. Gonzalez, 975 F.2d 1514, 1517 (11th Cir. 1992). We will find reversible error in a district court's refusal to give a requested jury charge only if "(1) the requested instruction correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." Richardson, 532 F.3d at 1289 (quotation marks omitted). In deciding whether a defendant's requested instruction was substantially covered in the actual charge given to the jury, we "need only ascertain whether the charge, when viewed as a whole, fairly and correctly states the issues and the law." Gonzalez, 975 F.2d at 1517. Further, "a defendant is not automatically entitled to a theory of the defense instruction if that argument is adequately covered in another instruction . . . ." United States v. Blanton, 793 F.2d 1553, 1561 (11th Cir. 1986).

Here, the district court did not abuse its discretion in refusing to give Montera-Beltran's requested jury instruction because the actual charge given substantially covered his proposed jury instruction. See Richardson, 532 F.3d at 1289. Montera-Beltran's proposed instruction emphasized that knowledge of the conspiracy, presence during the commission of overt acts, and flight from police alone are not sufficient to sustain a conviction. While the district court did not use Montera-Beltran's proposed language, it did instruct the jury, inter alia, that a conspirator must willfully join the conspiracy while "knowing the unlawful purpose of the plan," and that the act must have been done "voluntarily and intentionally and not because of mistake or accident." The district court also stated that a "person who has no knowledge of a conspiracy but who happens to act in a way which advances some purpose . . . does not thereby become a conspirator." In regard to "presence," the court instructed that "mere presence at the scene of the transaction or event . . . does not standing alone establish proof of conspiracy." With respect to "flight," the court stated that "intentional flight by a person immediately after a crime has been committed or after that person has been accused of a crime that has been committed is not sufficient in itself to establish the guilt of that person." The court stated, "There may be reasons for a person to be unwilling to be interviewed by law enforcement agents that are perfectly

innocent that in no way show any consciousness of guilt . . . ." Thus, the jury instructions given substantially covered Montera-Beltran's proposed instruction. Accordingly, we affirm Montera-Beltran's conviction.

Next, we reject Sanchez-Morena's claim that the district court clearly erred in calculating the drug quantity attributable to him for purposes of determining his base offense level. Section 2D1.1 of the Sentencing Guidelines provides that the base offense level for a possession or a conspiracy drug offense is ordinarily calculated by determining the quantity of drugs attributable to a defendant. See generally U.S.S.G. § 2D1.1. When a conviction stems from conspiracy charge, the defendant is responsible for the amount of drugs in all reasonably foreseeable acts done in furtherance of the conspiracy. U.S.S.G. § 1B1.3(a)(1)(B).

In determining the drug quantity, the sentencing court may use the evidence heard during trial, facts admitted by the defendant's plea of guilty, undisputed statements in the presentence investigation report ("PSI"), or evidence presented at the sentencing hearing. United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989).[1] Where the district court's determination of the drug quantity is based on

---

[1] A defendant's failure to object to the facts stated in a PSI or PSI Addendum constitutes an admission of those facts. United States v. Bennett, 472 F.3d 825, 833-34 (11th Cir. 2006). We have held that "challenges to the PSI must assert with specificity and clarity each factual mistake of which [the] defendant complains." United States v. Aleman, 832 F.2d 142, 145 (11th Cir. 1987). The district court is entitled to rely on statements in the PSI when they are not contested, even in the absence of supporting evidence. United States v. Hedges, 175 F.3d 1312, 1315 (11th Cir. 1999).

testimony of witnesses who appear before the court, great deference is given to the court's assessment of the credibility of witnesses and evidentiary content of the testimony. United States v. Lee, 68 F.3d 1267, 1276 (11th Cir. 1995). If a district court does not make individualized findings regarding the scope of criminal activity undertaken by a particular defendant in a drug conspiracy, "the sentence may nevertheless be upheld if the record supports the amount of drugs attributed to a defendant." United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993).

"'Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.'" United States v. Frazier, 89 F.3d 1501, 1506 (11th Cir. 1996) (quoting U.S.S.G. § 2D1.1, cmt. n.12). "In estimating the quantity of drugs attributable to a defendant, a court may base its computation on evidence showing the average frequency and amount of a defendant's drug sales over a given period of time." Id. A defendant's sentence cannot be based on mere speculation, but must "be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant . . . ." United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998).

"When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of

establishing the disputed fact by a preponderance of the evidence." Rodriguez, 398 F.3d at 1296. Although the preponderance standard is a relaxed evidentiary standard, "it does not grant the court a license to sentence a defendant in the absence of sufficient evidence." Id. (quotations marks omitted).

The record here shows that the district court did not clearly err in sentencing Sanchez-Morena pursuant to U.S.S.G. § 2D1.1(c)(2) based on its finding that the conspiracy involved more than 50 kilograms of cocaine hydrochloride, because there was sufficient evidence in the record to support the finding. Law enforcement seized 25 kilograms of cocaine hydrochloride that was en route to Sanchez-Morena's house. Witnesses testified to delivering three to six shipments of cocaine to Sanchez-Morena on prior occasions. The PSI contained undisputed statements from a cooperating defendant that each of these prior shipments contained between 10 and 25 kilograms of cocaine hydrochloride. Therefore, the district court did not clearly err by attributing at least 50 kilograms of cocaine hydrochloride to Sanchez-Morena.

Finally, we find no merit to Sanchez-Morena's argument that the district court clearly erred in finding that he possessed a dangerous weapon for purposes of enhancing his sentence. Guidelines Section 2D1.1 provides that a defendant's offense level should increase two points "[i]f a dangerous weapon (including a

firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The Sentencing Commission has noted that "[t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3.

To justify the dangerous weapon enhancement, the government must show by a preponderance of the evidence that either the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense. United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006). If the government meets its burden, the burden shifts to the defendant to demonstrate that a connection between the weapon and the offense was "clearly improbable." Id. (quotation marks omitted).

The defendant does not have to use the firearm to facilitate the commission of the offense. United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001). In establishing a connection between the firearm and a drug conspiracy, we have held that the firearm enhancement "is to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction." United States v. Pham, 463 F.3d 1239, 1246 (11th Cir. 2006) (quotation marks omitted). "Relevant conduct includes acts 'that were part of the same course of conduct or common scheme or

8

plan as the offense of conviction . . . .'" Id. (quoting U.S.S.G. § 1B1.3(a)(2)). In Pham, we concluded that a firearm was possessed during conduct relevant to the offense of conviction in a drug conspiracy case when the firearm was located in a safe containing drugs and drug paraphernalia. Id.

The district court did not clearly err in applying the two-point dangerous weapon enhancement because the firearm was present at the site of the charged conduct, and Sanchez-Morena failed to show that a connection between the firearm and offense was clearly improbable. Furthermore, police found the weapon in the same house where they discovered digital scales, a heat sealer for sealing bags, plastic bags, rubber bands, money wrappers, a money counter, and duct tape used to package money and drugs, and a money counter. Thus, the firearm was possessed during conduct relevant to the offense of conviction. See id. Accordingly, we affirm Sanchez-Morena's conviction and 180-month sentence.

**AFFIRMED.**