UNITED STATES of America, Plaintiff–Appellee,

v.

Jose Armando ALVARADO, Reyna Josefina Orts a.k.a. Reyna Ortz a.k.a. Reina Ortz a.k.a. Reina Ortiz, Jose Filgueiras, Raquel Filgueiras, Defendants–Appellants.

No. 13–15403.

United States Court of Appeals, Eleventh Circuit.

Feb. 12, 2016.

Ellen Meltzer, N. Nathan Dimock, Paul M. Rosen, U.S. Department of Justice,

Washington, DC, Kathleen Mary Salyer, Evelyn Baltodano–Sheehan, Wifredo A. Ferrer, Harold E. Schimkat, U.S. Attorney's Office, Miami, FL, for Plaintiff–Appellee.

Paul D. Petruzzi, Law Offices of Paul Petruzzi, PA, Michael Caruso, Federal Public Defender, Federal Public Defender's Office, Miami, FL, Robin J. Farnsworth, Federal Public Defender's Office, Fort Lauderdale, FL, for Defendants–Appellants.

Before WILSON, JULIE CARNES, and EBEL,* Circuit Judges.

PER CURIAM:

Defendants Jose Alvarado, Reyna Orts, Jose Filgueiras ("Jose"), and Raquel Filgueiras ("Raquel") challenge their convictions and sentences arising out of a mortgage-fraud scheme. After carefully reviewing the parties' briefs and the record, and with the benefit of oral argument, we affirm Defendants' convictions and sentences.

First, Orts, Jose, and Raquel argue that the Government presented insufficient evidence to support their bank fraud and wire fraud convictions. To decide the merits of a claim of insufficient evidence, we must determine whether a reasonable jury could have found that the evidence established each defendant's guilt beyond a reasonable doubt. See United States v. Doe, 661 F.3d 550, 560 (11th Cir.2011). In making this inquiry, we view the evidence in the light most favorable to the Government. Id. Given the ample evidence presented in this case, a reasonable jury could have found Defendants' guilt to have been proved beyond a reasonable doubt. Accordingly, we conclude that the evidence was sufficient to support defendants' convictions.

Next, Alvarado contends that the district court erred by failing to hold a competency hearing when, during voir dire, defense counsel informed the court that Alvarado had sleep apnea and therefore should be excused from trial to undergo medical treatment and be evaluated for competency. We construe Alvarado's request as a motion for competency hearing, and we review a district court's denial of such a motion under an abuse of discretion standard. See United States v. Nickels, 324 F.3d 1250, 1252 (11th Cir.2003). Because Alvarado failed to raise a "bona fide doubt" about his mental competence, we conclude that the district court did not abuse its discretion by failing to hold a competency hearing. See United States v. Cruz, 805 F.2d 1464, 1479 (11th Cir.1986) (holding that a court may deny a motion for competency hearing "without benefit of a full dress hearing so long as the court has no 'bona fide doubt' as to the competence of the defendant"). Nothing in the record suggests that Alvarado lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational as well as a factual understanding of the proceedings against him." Watts v. Singletary, 87 F.3d 1282, 1286 (11th Cir.1996) (internal quotation marks omitted) (competency hearing not required when defendant slept through about 70% of his murder trial but otherwise understood the proceedings against him and had the capacity to communicate with his lawyer).

* Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

In fact, counsel indicated that he had been able to adequately consult with Alvarado in preparation for trial and had never previously noticed the latter's propensity to fall asleep. Counsel learned of this alleged problem only when Alvarado's daughter reported at the beginning of jury selection that her father was sleeping. Moreover, Alvarado's ability to understand the proceedings and consult with his counsel were evidenced by the fact that he testified in his own defense, during which testimony he acknowledged remembering the testimony of most of the witnesses he was asked about. In short, because nothing at trial gave rise to a bona fide doubt that Alvarado was competent, the court did not err by failing to hold a competency hearing.

■ Alvarado, Jose, and Raquel also argue that the court should have given their proposed "good faith" defense instruction to the jury.[1] Defendants reason that they were entitled to such an instruction in light of Alvarado's testimony that bank representatives visited his real estate businesses and told him that it did not matter if employment and income information in mortgage applications was false. Thus, Defendants argue, their submission of numerous applications replete with information that was absolutely false was done under a good faith belief that the banks were content to accept such applications. That being so, Defendants contend that they were entitled to an instruction informing the jury that "an honestly-formed belief" cannot constitute fraudulent intent. The court declined to give Defendants' requested instruction, and they now contend that this decision constituted reversible error. We disagree.

A court abuses its discretion when it refuses to give a defendant's requested instruction if that instruction "(1) is correct, (2) is not substantially covered by other instructions which were delivered, and (3) deals with some point in the trial so 'vital' that the failure to give the requested instruction seriously impaired the defendant's ability to defend." *United States v. Opdahl*, 930 F.2d 1530, 1533 (11th Cir.1991). Here, because the district court's jury instructions substantially provided the same information contained in the instruction requested by Defendants, they have failed to meet the second element of the above test.

Specifically, as to the substantive fraud counts on which Defendants were convicted, the court instructed the jury that it could convict a defendant who has participated in a scheme to defraud or to obtain money by means of a false representation concerning a material fact, only if the jury found beyond a reasonable doubt that the defendant acted with an "intent to defraud." The court further defined the latter term, making clear that there can be no scheme to defraud unless a defendant who uses false or fraudulent representations does so "*intend[ing] to deceive or cheat someone* out of money...." (emphasis added). As to the meaning of the words "false" or "fraudulent" when used in connection with a statement or representation, the court indicated that not only must such a statement be material, but again the speaker must have made that false statement "with the intent to defraud." Further emphasizing the importance of the intent to defraud in the jury's deliberations, the court a few minutes later repeated the definition: "The 'intent to defraud' is the *specific intent to deceive or*

---

1. Raquel did not request this instruction at trial, so her claim is reviewed for plain error. *United States v. Gutierrez*, 745 F.3d 463, 471 (11th Cir.2014). In any event, we find that her claim fails under any standard of review.

*cheat someone,* usually for personal financial gain or to cause financial loss to someone else." (emphasis added). Finally, in its concluding remarks, the court defined the term "knowingly" as meaning that a defendant did an act voluntarily and intentionally and not because of a mistake, and the term "willfully" as requiring that a defendant commit a particular act "voluntarily and *purposely, with the intent to do something the law forbids;* that is, *with the bad purpose to disobey or disregard the law.*" (emphasis added).

Thus, because the court's instructions essentially covered the same information found in the requested "good faith" instruction, Defendants have failed to meet the second element of the test we apply to determine whether a district court's refusal to give a particular instruction constitutes an abuse of discretion. In *United States v. Walker,* 26 F.3d 108, 110 (11th Cir.1994), we likewise found the defendant deficient in his showing on this element, noting that "[a] finding of specific intent to deceive categorically excludes a finding of good faith." (citation omitted). Indeed, much like this case, we noted that the instructions given to the jury in *Walker* contained "a detailed explanation of what 'intent'" meant in that case and "adequately addressed the concept of good faith." *Id.* Finding no reversible error, we concluded that "a good faith defense instruction would have been superfluous" because in deciding that the Government had proven its case, the jury "essentially considered the defense of good faith and rejected it. . . ." *Id. See also United States v. McNair,* 605 F.3d 1152, 1201 n. 65 (11th Cir.2010) ("a finding of specific intent to defraud necessarily excludes a finding of good faith").

■ For the same reasons, we conclude that Defendants also failed to prove the third element of the test: that the absence of the requested instruction seriously impaired the defendant's ability to defend. The jury could not have found that Defendants acted with the specific intent to deceive or cheat the banks, as required by the court's instructions, had the jury concluded that Defendants honestly believed the banks did not care what information the loan applications contained. And because the district court permitted defense counsel to argue the good faith of their clients in their summation, the jury was well aware that Defendants were basing their defense, in part, on their purported honest belief that the banks did not care what information was included in the applications. *See United States v. Martinelli,* 454 F.3d 1300, 1316 (11th Cir.2006) (failure to instruct on good faith did not substantially impair defense because, among other reasons, defendant's attorney argued good faith at closing). In summary, we conclude that the district court did not abuse its discretion by denying the requested instruction and we therefore find no reversible error.

■ Finally, Orts, Jose, and Raquel challenge the district court's decision to apply a "sophisticated means" enhancement when calculating the Sentencing Guidelines. *See* U.S.S.G. § 2B1.1(b)(10)(C). We review for clear error a district court's factual findings concerning the imposition of a sentencing enhancement. *United States v. Robertson,* 493 F.3d 1322, 1329 (11th Cir.2007). Defendants argue that the court erred because it examined the sophistication of the overall scheme, when instead it should have inquired whether each defendant's individual conduct was sophisticated. In mounting this argument, Defendants rely greatly on Amendment 792 to the Sentencing Guidelines, which took effect after their sentences had been imposed, but while this appeal was pending. Before

passage of the amendment, the enhancement applied if "the offense otherwise involved sophisticated means." *Id.* The amendment, however, "narrow[ed] the focus of the specific offense characteristic at § 2B1.1(b)(10)(C) to cases in which the defendant intentionally engaged in or caused conduct constituting sophisticated means." U.S.S.G. supp. app'x C amend. 792 at 113 (Nov. 1, 2015). The above three defendants argue that none of them engaged in conduct that constituted sophisticated means, as set out in the amended language.

■ We typically apply the version of the Guidelines in effect on the date of sentencing, but if a subsequent amendment clarifies the Guidelines, the amendment should be considered on appeal regardless of the date of sentencing. *United States v. Jerchower,* 631 F.3d 1181, 1184 (11th Cir.2011). Substantive changes to the Guidelines, as opposed to revisions that merely clarify, are not applied retroactively, however. *Id.* Here, guided by the reasoning in *Jerchower,* we conclude that Amendment 792 constituted a substantive change to the original provision, not a clarification. Therefore, it cannot be applied retroactively. First, the amendment altered the text of the Guidelines, not just the commentary, which suggests a substantive change. *Id.* at 1185. Second, the commentary accompanying the amendment suggested that the latter constituted a substantive change. *Id.* Specifically, this commentary noted that the amendment "narrowed" the scope of the offense characteristics. Third, the amendment does not appear in the list of retroactive amendments in § 1B1.10(c). *Id.* Fourth, an amendment that overturns circuit precedent suggests a substantive change. *Id.* The commentary noted that the amendment overturned circuit precedent that "had applied this enhancement based on

the overall scheme without a determination of whether the defendant's own conduct was 'sophisticated.'" U.S.S.G. supp. app'x C amend. 792 at 113 (Nov. 1, 2015). Therefore, for the above reasons, the amended version of § 2B1.1(b)(10)(C) does not apply to this case.

Looking then at the earlier version of the Guidelines that was in effect at sentencing, we conclude that the district court did not clearly err in finding that the sophisticated means enhancement should apply to Orts, Jose, and Raquel. That pre-amendment iteration contains no requirement that each individual action be sophisticated, but instead it is sufficient if the totality of the activities was sophisticated. *See United States v. Barrington,* 648 F.3d 1178, 1199 (11th Cir.2011); *United States v. Ghertler,* 605 F.3d 1256, 1267–68 (11th Cir.2010). Accordingly, we affirm the district court's decision to impose this enhancement.

For all of the above reasons, we affirm Defendants' convictions and sentences.

**AFFIRMED.**