**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Earl YOUNG, Sr., Defendant-
Appellant.**

No. 71-2251

**Summary Calendar.** *

United States Court of Appeals,
Fifth Circuit.

July 7, 1972.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Jack H. Young, Jackson, Miss. (Court appointed), for defendant-appellant.

Robert E. Hauberg, U. S. Atty., Daniel E. Lynn, James B. Tucker, Asst. U. S. Attys., Jackson, Miss., for plaintiff-appellee.

Before WISDOM, GODBOLD, and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

James Earl Young, Sr. was convicted by a jury of assaulting a federal officer in violation of 18 U.S.C. § 111[1] and damaging property of the United States in violation of 18 U.S.C. § 1361.[2] We vacate both judgments of conviction.

The convictions arose from the events surrounding Young's arrest by the FBI for certain other offenses against the United States.[3] On September 2, 1970, at approximately 1:00 P.M., Young was driving his 1965 Oldsmobile in an easterly direction in the south lane of traffic on Monument Street in Jackson, Mississippi. There were three passengers in the defendant's car. Special Agents William R. Stringer and William H. Garvie of the FBI were trailing Young's car in a government car with the intention of arresting him.

Agent Stringer, driving the Government's car, pulled alongside Young's car. Agent Garvie, who was seated on the passenger side of the front seat, made an effort to display his badge and credentials to Young while both Young's car and the Government car continued in motion, at speeds estimated from 15 to 30 miles per hour. Then the Government car abruptly pulled in front of Young's car; there was conflicting testimony as to whether Young's car had been brought to a stop before Agent Stringer cut in front to prevent further forward motion. The Government car

1. 18 U.S.C. § 111:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined no more than $10,000 or imprisoned not more than ten years, or both.

2. 18 U.S.C. § 1361:

Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, shall be punished as follows:

If the damage to such property exceeds the sum of $100, by a fine of not more than $10,000 or imprisonment for not more than ten years, or both; if the damage to such property does not exceed the sum of $100, by a fine of not more than $1,000 or by imprisonment for not more than one year, or both.

3. This Court affirmed Young's conviction on those charges in United States v. Johnson, 5 Cir. 1972, 455 F.2d 311.

was positioned diagonally in front of Young's car with the transmission in the "park" position and the right side of the car at an angle to the front of Young's car. As Agent Garvie stepped out of the Government car and started toward Young, Young suddenly drove his car forward and ran into the right rear door of the Government car, striking the right front door and damaging both doors of the Government car. Agent Garvie was forced to jump back into the car to keep from being run over.

The Government took the position that Young was deliberately trying to run over Agent Garvie, and that he had damaged Government property in the course of committing the assault on Garvie. Young admitted that his car struck the Government car, but denied that the Government car or his own car had come to a complete stop. He alleged that he had no intention of running over Agent Garvie or of striking the Government car. Young's version of the facts was that he did not realize that the men who attempted to impede his progress on Monument Street were law enforcement officers trying to arrest him. He urged that the collision with the Government car occurred when he attempted to swivel his car sharply and continue on his way—"simply a non-violent attempt to prevent two strange white men from stopping his path of travel." [4]

4. Young testified at the trial as follows:
    . . . I was going down the street and all a sudden was a car blowed its horn and I looked over and they whipped in, they whipped in front of me and before the man got out, I didn't know who it was because unmarked car I don't know who it was, the only thing I know the car was whipping in front of me, and this guy was gitting, before the car stopped and before mine stopped he had jumped out of the car with his door wide open. I tried to get out of the way and that's when my bumper catched his door.
    Q. Now is it your testimony that you did not know who it was?

The trial court's charge to the jury, in pertinent part, read as follows:

. . . It is completely unimportant whether this defendant did or did not know that these men were FBI agents on such occasion. He didn't have to know that. Whether he knew it or not if he did what the government contends that he did whether he knew that they were agents at the time or not would make no difference as to whether he is guilty or innocent.

\*      \*      \*      \*      \*      \*

An intentional or unlawful threat or attempt to commit injury upon the person of another when coupled with an apparent present ability so to do and an intentional display of force such as to place the victim in reasonable apprehension of immediate bodily harm constitutes an assault. An assault may be committed without actually touching, striking or committing bodily harm to another.

. . .

Unlawfully as used in this instruction means either contrary to law or without legal justification; thus a person who in fact has the present ability to inflict bodily harm upon another, wilfully threatens or attempts to inflict bodily harm upon such person may be found guilty of forcefully assaulting such person.

The essential elements required to be proved in order to establish the of-

A. I don't know who he was and after he got out that's when he come up and went in his pocket and come up with this badge and he did not have no badge on the outside of his thing because he went in his coat pocket and opened it up, come right up to the car and opened it up.

On cross-examination, Young added:
    . . . I am telling you the truth of it, I didn't try to run over no FBI, I didn't know who no FBI was, he was in a plain car and it was a car, all I know was a car whipped in front of me and he was gitting out his car when his car whipped in front of me, I tried to avoid it, that's when I turned trying to git out the way.

fense charged in the indictment are first the act or acts of forcefully assaulting an agent of the Federal Bureau of Investigation while the agent was engaged in the performance of his official duties as charged, and second, such act or acts wilfully which means with bad purpose to disregard the law.

\* \* \* \* \* \*

Knowledge of the identity or official character of the person assaulted is not an essential element of the offense. If the defendant assaults a federal officer in order to be guilty it will not be necessary that the defendant should know that they were federal officers to be guilty of the offense charged.

You are instructed that if you believe beyond a reasonable doubt that the defendant, James Earl Young, did forcefully assault, resist, oppose, impede, intimidate or interfere with an FBI agent who was engaged in the performance of his official duties then it is your sworn duty to find the defendant guilty as charged in count one of the indictment.

██ Our prior decisions hold that knowledge of the official capacity of the person assaulted is unnecessary for conviction under 18 U.S.C. § 111. Burke v. United States, 1968, 400 F.2d 866; Pipes v. United States, 1968, 399 F.2d 471; Bennett v. United States, 1960, 285 F.2d 567. But none of those cases holds that a defendant may be held absolutely liable for "assaulting" a government officer when the defendant acts from the mistaken belief that he himself is threatened with an intentional tort by a private citizen. "[A] case based upon Section 111, as construed by this court, is

not submitted to the jury without a charge that the 'assault' must be an intentional act wilfully done without legal excuse." *Burke, supra,* 400 F.2d at 867.

██ When there is no doubt of the defendant's unlawful intention, knowledge of the official capacity of the victim is invariably unnecessary; the assailant takes his victim as he finds him. But if the defendant asserts a lack of intention or wilfulness based upon ignorance of the identity of the victim and ignorance of the victim's official privilege to interfere with the defendant's person or freedom of movement, the jury must be allowed to consider the defendant's evidence tending to show that he was ignorant of the official capacity of the victim. For only then can the jury give fair consideration to whether the "assault" was "an intentional act wilfully done without legal excuse." *Burke, supra.*[5]

██ The portion of the instruction quoted first was broad enough to permit the jury to find Young guilty of the offenses charged even if the jury believed Young's testimony that he thought he was being harassed by local rowdies. Instead, the jury should have been clearly instructed that it could not find Young guilty of the offenses charged unless the jury believed that Young intended to threaten or attempted to injure Agent Garvie; and that Young could not intend to threaten or to attempt to injure Agent Garvie if Young acted out of a reasonable belief that Agents Garvie and Stringer were strangers who intended to inflict harm upon Young. Such an instruction would permit the jury to pass upon Young's contention that he had no unlawful intention to commit the offenses charged

---

5. Judge Godbold accurately predicted the confusion underlying the trial court's charge to the jury in the present case. In his concurring opinion in Pipes v. United States, *supra,* Judge Godbold observed, "An unlimited rule of no knowledge would have to be restricted sooner or later in circumstances involving rights of citizens who are involved with persons they neither know nor have reason to know are federal officers." 399 F.2d at 478.

because he acted to protect himself and his fellow passengers.

The Government, in its supplemental brief, points out that the trial court instructed the jury to convict the defendant only upon finding an "unlawful" attempt to inflict injury, defined as attempt "either contrary to law or without legal justification." This portion of the charge, the Government urges, removes the sting from the portion of the charge which stated "it is completely unimportant whether this defendant did or did not know that these men were FBI agents . . ." We disagree. At best, the charge was confusing and contradictory, even when read in light of the words now stressed by the Government. At best, one portion of the charge correctly stated the applicable law in general terms, but another portion eliminated the key specific ground on which Young denied the wilfulness of his conduct.[6]

■ We conclude that the charge, considered as a whole, failed "to define with substantial particularity the factual issues," and failed "clearly to instruct the jurors as to the principles of law . . . to apply in deciding the factual issues involved in the case before them." United States v. Hill, 5 Cir.

1969, 417 F.2d 279, 281. The failure to instruct properly on the issue of intention effectively deprived Young of his right "to have presented instructions relating to a theory of defense for which there is any foundation in the evidence." Perez v. United States, 5 Cir. 1961, 297 F.2d 12, 14–15. As the Court of Appeals for the District of Columbia Circuit has said:

> We do not intend to characterize the case for the defense as either strong or weak. That is unnecessary, for "in criminal cases the defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility. He is entitled to have such instructions even though the sole testimony in support of the defense is his own." (citations omitted).

Tatum v. United States, 1950, 88 U.S. App.D.C. 386, 190 F.2d 612, 617, quoted with approval in Strauss v. United States, 5 Cir. 1967, 376 F.2d 416, 419.

For plain error in the court's charge to the jury, the judgments of conviction are vacated.

---

6. The flaws in the court's charge infect not only the conviction under Section 111 but also the conviction of Young for damaging government property. 18 U.S.C. § 1361, *supra* note 2. Section 1361 applies only to a person who "wilfully injures or commits any depredation against any property of the United States. . . . " At the very least, the statutory prescription of wilfulness requires that the accused have intended to damage or destroy the property in question, whether or not the accused knew the property was United States property when he acted against it. We assume, without

deciding, that only this minimum level of wilfulness is required by Section 1361.
   Still, by analogy to assault, an intentional act of damage or destruction may be justified—for instance, by necessity or in self-defense. Such justification for the act of destruction would negate the criminal *mens rea* required by Section 1361. In the present case, the court's instruction deprived Young of the defense that he rammed the FBI car only because he believed himself the target of an unlawful assault, from which Young was trying to make his escape.