# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-40635

United States Court of Appeals
Fifth Circuit

**FILED**

November 12, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

PEDRO ALVARADO,

Defendant - Appellant

-------------------------------------------------------------------------------------------

cons/w 14-40641

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ARNOLDO ALVARADO,

Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC 7:12-CR-1136

Before KING, DENNIS, and OWEN, Circuit Judges.

No. 14-40635

PER CURIAM:[*]

This direct criminal appeal arises from the conviction following jury trial of Appellants Pedro Alvarado (Pedro) and Arnoldo Alvarado (Arnoldo) for aggravated assault of a federal agent with a deadly weapon, 18 U.S.C. §§ 111(a)(1) and (b) and 18 U.S.C. § 2, and unlawful use of a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 924(c)(1) and (c)(1)(A)(iii) and 18 U.S.C. § 2. For the following reasons, we affirm the judgment of the district court.

I.

Around 3:00 am on July 3, 2012, Rene Garcia—who was allegedly casing the area in preparation for a drug heist—contacted Pedro and informed him that a suspicious vehicle was parked under a tree on the Alvarado family's property.[1] Pedro told Arnoldo, then 18 years old, and his other son Marques, then 16 years old, to join him to investigate. Arnoldo and Marques each retrieved a gun and the three got into Pedro's pickup truck and drove down the road towards the suspicious vehicle. The suspicious vehicle was actually the unmarked Jeep of Special Agent Kelton Harrison, who was parked with his engine on and his lights off conducting an undercover stakeout as part of an ongoing Homeland Security investigation. Agent Harrison testified that, upon seeing Pedro's pickup truck slowly approaching, he attempted to leave the property, but he soon heard shots ring out and felt the impact of bullets on both sides of his vehicle. As he accelerated in an attempt to escape, another truck,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] More specifically, Pedro was informed that a suspicious vehicle was parked under a tree near Arnoldo and Marques's aunt's house, at the intersection of 11th Street (Cemetary Road) and Route 493 in Hargill, TX, which is approximately a quarter mile from the Alvarados' home. Marques testified that the aunt had moved away and left the house in his family's care.

later discovered to be driven by Garcia and his coconspirators, blocked his Jeep from leaving.  Agent Harrison was able to get around Garcia's truck and drive off the property and onto Route 493, but the Alvarados and Garcia continued to pursue Agent Harrison for about three miles.  It is undisputed that Arnoldo and Marques continued to shoot their firearms, but there is conflicting testimony about whether the Alvarados fired at Harrison's Jeep once they left their family's property:  Arnoldo testified that after Harrison pulled onto Route 493 he only shot into the air in an attempt to scare the driver away.  Ultimately, Agent Harrison's truck was struck by approximately 12 bullets, one of which struck the agent in the back.  Agent Harrison continued north on 493 until he came to a T-intersection, where his vehicle hit a fence and crashed into a field.  Agent Harrison ran from his vehicle and hid in a brush of trees for a short period, then crawled back to his vehicle and called for help.  Agent Harrison survived and testified at trial to these events.

Pedro and Arnoldo were charged by superseding indictment with attempted murder of a federal officer (Count One); assault of a federal officer by means of a deadly and dangerous weapon (Count Two); and use of a firearm during and in relation to a crime of violence (Count Three).  The central facts were uncontested at trial.  At the close of the evidence, Arnoldo and Pedro urged the district court to instruct the jury regarding self-defense.  The district court denied the request, reasoning that a rational jury could not conclude that either Pedro or Arnoldo was in fear for his life or was reasonable in his use of force during the three-mile pursuit of Agent Harrison.

The jury convicted Pedro and Arnoldo of Counts Two and Three, but could not reach a verdict on Count One, the attempted murder charge.  Pedro was sentenced to a non-Guideline sentence of 120 months' imprisonment on Count Two and 120 months' imprisonment on Count Three, to be served consecutively for a total of 240 months.  Arnoldo was sentenced to 72 months'

No. 14-40635

imprisonment on Count Two and 120 months' imprisonment on Count Three, to run consecutively. Pedro and Arnoldo separately appealed, and this court *sua sponte* consolidated their cases.

## II.

Pedro and Arnoldo both contend that the district court erred by declining to charge the jury with a self-defense instruction. "We review *de novo* a district court's refusal to offer an instruction for a criminal defense that, if credited, would preclude a guilty verdict." *United States v. Theagene*, 565 F.3d 911, 917 (5th Cir. 2009); *see also United States v. Bradfield*, 113 F.3d 515, 521 (5th Cir. 1997); *United States v. Gentry*, 839 F.2d 1065, 1071 (5th Cir. 1988). The requested charge is such an instruction.

As the Supreme Court held in *Mathews v. United States*, 485 U.S. 58, 63 (1998), "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Evidence is "sufficient" where it "raise[s] a factual question for a reasonable jury." *United States v. Branch*, 91 F.3d 699, 712 (5th Cir. 1996). Although "[a] district court cannot refuse to give an instruction for which there is sufficient evidence in the record for a reasonable juror to harbor a reasonable doubt that the defendant did not act in self defense, . . . the district court is not required 'to put the case to the jury on a basis that essentially indulges and even encourages speculations.'" *Id.* (quoting *United Sates v. Collins*, 690 F.2d 431 (5th Cir. 1982)). Rather, all evidence must be considered in the context of the entire record. *See id.*

In *United States v. Feola,* 420 U.S. 671, 684 (1975), the Supreme Court held that a conviction for assault of a federal officer under 18 U.S.C. § 111 requires "an intent to assault, not an intent to assault a federal officer." However, the Court made clear that there could be some situations in which ignorance of the officer's status would negate criminal intent:

4

> For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent.

*Id.* In order to warrant an acquittal under a theory of self-defense, a defendant charged under § 111 must produce evidence demonstrating that he was unaware of the federal officer's identity and reasonably believed that the officer intended to damage his home or injure his family. *United States v. Ochoa,* 526 F.2d 1278, 1281 (5th Cir. 1976). In other words, the ultimate question is "whether [the defendant] believed that he needed to defend himself against an assault by a private citizen." *United States v. Kleinebreil*, 966 F.2d 945, 951 (5th Cir. 1992).

Appellants liken their case to *United States v. Young*, 464 F.2d 160, 163 (5th Cir. 1972), where this court held the jury should have been instructed that it could not find the defendant guilty under § 111 if it believed that he acted out of a reasonable belief that the federal agents were strangers who intended to inflict harm on him. But *Young* both applies an outdated legal standard and is factually distinguishable from the case at hand. The *Young* court determined that there was "any foundation in the evidence" to support a finding that Young believed that the federal officers "intended to inflict harm upon [him]." *Id*. at 163-164. A rule that entitled a defendant to a jury instruction if it was supported by "any evidence" was expressly rejected by this court in *Branch*. 91 F.3d at 713 ("[I]t is not enough that an item of evidence viewed alone and unweighed against all the evidence supports an inference that a defendant acted in self defense."). Furthermore, unlike in *Young*, where evidence showed that the agents' car "abruptly pulled in front of Young's" and Young "thought he was being harassed by local rowdies," 464 F.2d at 161, 163,

5

no evidence was presented to suggest that, when Agent Harrison was shot, the Appellants reasonably believed that he intended to inflict harm upon them.

The only evidence that even suggested that Arnoldo and Pedro acted out of fear for their safety—Arnoldo's testimony that he and his father thought that Agent Harrison was a stranger intruding on their property, that his family was recently the victim of an armed intruder, and that he heard shots fired before he or his brother fired their weapons—was insufficient to show that they reasonably acted in self defense when they pursued and fired upon Agent Harrison's fleeing vehicle. *See Branch*, 91 F.3d at 712. Agent Harrison did nothing aggressive but began his attempt to escape as soon as Pedro drove towards his vehicle. It was not contested that Pedro and his sons sought out Agent Harrison's vehicle, that Arnoldo and his brother fired upon Agent Harrison's vehicle as it attempted to leave the Alvarados' property, or that Pedro pursued Agent Harrison, at high speeds, for over three miles. Arnoldo and his brother did not testify that they saw muzzle flashes coming from Agent Harrison's vehicle or that that they definitely believed that the gunshots they heard came from the Jeep. Nor was evidence presented to contradict Agent Harrison's testimony that he felt the impact of a bullet on his back when he was already over a mile away from the Alvarados' property. Considering the record as a whole, the evidence was insufficient for a reasonable jury to find in Appellants' favor. The district court therefore did not err when it denied the self-defense jury instruction.

### III.

Pedro contends that the non-Guideline sentence of 120 months imposed by the district court for Count Two was substantively unreasonable and that the upward variance was impermissibly based on conduct for which he was acquitted, namely the attempted murder of Agent Harrison. This court reviews a sentence for reasonableness using a two-step process: first, the court

must ensure that the district court did not commit any significant procedural error; then, the court must consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard, taking into account the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). When reviewing a non-Guideline sentence—that is, a sentence either higher or lower than the relevant Guideline range—this court may not apply a presumption of unreasonableness. *Id.* The reviewing court "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* The sentencing court's factual findings are reviewed for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (quoting *United States v. Juarez Duarte*, 513 F.3d 204, 2008 WL 54791, at *3 (5th Cir. 2008)).

A district court may impose a non-Guideline sentence if it first calculates the Guideline range and considers it advisory, using the appropriate Guideline range as a "frame of reference." *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006). The district court must "more thoroughly articulate its reasons when it imposes a non-Guideline sentence than when it imposes a sentence under authority of the Sentencing Guidelines" and ensure that its reasons are consistent with the factors enumerated in 18 U.S.C. § 3553(a). *Id.* These factors include the nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed to reflect the seriousness of the offense. In *United States v. Watts*, 519 U.S. 148, 157 (1997), the Supreme Court held a sentencing court may consider conduct underlying a charge for which the defendant was acquitted "so long as that conduct has been proved by a preponderance of the evidence." *See also United States v. Vaughn*, 430 F.3d 518, 526-17 (5th Cir. 2005) (stating that *Watts* remained valid after *United States v. Booker*, 543 U.S. 220 (2005)); *United*

*States v. Partida*, 385 F.3d 546, 565 (5th Cir. 2004) (explaining that because the standard of proof at sentencing is lower than the proof necessary to convict at trial, the scope of a sentencing court's fact finding is not limited to considering only the conduct of which the defendant was formally charged or convicted); *United States v. Cathey*, 259 F.3d 365, 368 (5th Cir. 2001) (citing *Watts* and rejecting defendant's argument that district court was precluded from sentencing him on conduct for which the jury was unable to reach a verdict).

Pedro does not contend that his sentence was procedurally unreasonable, and there is no evidence of procedural error. Pedro argues that his sentence was substantively unreasonable because it was based on the attempted murder charge, the one charge on which the jury could not agree. He asserts that the fact that the jury could not reach a verdict precludes a finding that the underlying conduct was proven by a preponderance of the evidence. However, as the Supreme Court noted in *Watts*, "an acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt." 519 U.S. 148, 155 (1997) (quoting *United States v. Putra*, 78 F.3d 1386, 1394 (9th Cir.1996) (Wallace, J., dissenting)). As this court has repeatedly stated, "a finding of fact is clearly erroneous only if a review of all the evidence leaves [the reviewing court] with the definite and firm conviction that a mistake has been committed." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (quoting *United States v. Castillo*, 430 F.3d 230, 238 (5th Cir.2005)) (internal quotation marks omitted). The trial testimony indicated that Pedro involved his children, one of whom was a minor, in a high-speed chase that left the Agent Harrison's vehicle riddled with bullets and the agent himself in the ICU. The PSR set forth that Arnoldo told officials that he fired over 15 rounds of ammunition and his brother fired at least six rounds as Pedro pursued Agent

No. 14-40635

Harrison for several miles.  In light of the record, the district court's finding that Pedro's conduct was egregious, consisting of the "relentless pursuit of [a] fleeing human being in an attempt to murder the person, in an attempt to kill the person," was not clearly erroneous.  As a result, the district court's reliance on that finding in deviating from the guidelines—consistent with the factors enumerated in § 3553(a)—did not render Pedro's sentence substantively unreasonable.

IV.

Arnoldo contends that the district court violated his Sixth Amendment right of confrontation when it refused to allow cross-examination of Agent Harrison on the issue of the federal agents' "bungled operation."  Whether the Confrontation Clause issue was properly raised at trial determines the appropriate standard of review:  This court reviews any Confrontation Clause issues that were not contemporaneously raised at trial for plain error only, while Confrontation Clause issues that were properly raised at trial are reviewed *de novo*, subject to harmless error analysis.  *United States v. Octave*, 575 F. App'x 533, 537 (5th Cir. 2014) (citing *United States v. Acosta*, 475 F.3d 677, 680 (5th Cir.2007)).  Where there has been no constitutional violation, this court reviews a district court's limitations on cross-examination for an abuse of discretion, "which requires a showing that the limitations were clearly prejudicial." *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008) (citing *United States v. Jimenez*, 464 F.3d 464, 558-59).

A defendant's constitutional right to cross-examine witnesses against him is secured by the Confrontation Clause of the Sixth Amendment. *United States v. Mayer*, 556 F.2d 245, 248 (5th Cir.1977).  Cross-examination "is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 559. "The Confrontation Clause is satisfied where defense counsel has been allowed to expose the jury to facts from which the

jury could appropriately draw inferences relating to the reliability of the witness." *Heard*, 709 F.3d at 432. This court has recognized that a district court has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States v. Heard*, 709 F.3d 413, 432 (5th Cir. 2013) (internal quotation marks and citation omitted). However, "a judge's discretionary authority to limit the scope of cross-examination comes into play only after the defendant has been permitted, as a matter of right, sufficient cross-examination to satisfy the Sixth Amendment." *United States v. Davis*, 393 F.3d 540, 548 (5th Cir. 2004).

Arnoldo objected to the restrictions on cross-examination, but not on Confrontation Clause grounds. We need not determine whether his objection properly raised the issue, however, because his constitutional claim lacks merit. Decisions of the Supreme Court and of this court recognize that restrictions on the scope of cross-examination can violate the Confrontation Clause. *E.g. Davis v. Alaska*, 415 U.S. 308, 318 (1974); *United States v. Morris*, 485 F.2d 1385, 1387 (5th Cir. 1973). However, these cases make clear that the concern with such restrictions is that they might undermine the purpose of cross-examination by denying defense counsel the opportunity "to delve into the witness' story to test the witness' perceptions and memory, [and also] . . . to impeach, *i.e.*, discredit, the witness." *Davis*, 415 U.S. at 316. Therefore, to establish a violation of the right to confrontation, a defendant must establish that "a reasonable jury might have received a significantly different impression of the witness's credibility had defense counsel been permitted to pursue his proposed line of cross-examination." *Skelton*, 514 F.3d at 439-40 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal alterations

omitted).   Here, Arnoldo does not allege that his inability to cross-examine Agent Harrison about the nature of the operation prevented him from exposing the witness's biases or motives.    Instead, he contends that the restriction denied him the opportunity to elicit testimony that was "at the very core of the Appellant's self-defense claim," testimony that might establish that Agent Reneau knew that there might be counter-surveillance the night that Agent Harrison was shot and that his injury might have been prevented if Reneau had informed him and his team of that fact.   Not only did the restriction on cross-examination not change the jury's perception of Agent Harrison's credibility, but defense counsel did in fact elicit testimony from Agents Jean-Paul Reneau and Harrison about the poor planning of the Homeland Security operation: before the Government objected, Agent Harrison conceded that he was concerned about the lack of a formal plan, and Agent Reneau admitted that he deviated from normal operating procedure by obtaining only verbal approval for the surveillance conducted on the night of the shooting.

The restriction on cross-examination did not change the jury's perception of Agent Harrison's credibility; it excluded only cumulative evidence testimony regarding Agent Harrison's frustration with Agent Reneau's handling of the surveillance operation.   Such a restriction neither violates the dictates of the Sixth Amendment nor is so prejudicial as to constitute an abuse of discretion. *See, e.g.*, *United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993) (no constitutional violation and no abuse of discretion where, despite a restriction on cross-examination, the jury could have inferred that the witness was biased); *United States v. Vasilios*, 598 F.2d 387, 390 (5th Cir. 1979) (defendant was not prejudiced by the restrictions placed on his counsel's cross-examination of key government witness where "[t]he jury was sufficiently apprised of other bases on which [the defendant's] credibility was vulnerable to attack").

No. 14-40635

V.

Arnoldo argues that the district court erred when it overruled his objection to the instruction in the jury charge that he need not have known he was assaulting a federal agent. Supreme Court case law is clear that to be convicted of assault on a federal officer, the defendant need not have the specific intent to assault a *federal officer*—rather, the intent to assault is sufficient. *See Feola*, 420 U.S. at 684. The defendant's ignorance of the victim's official status may negate criminal intent where the circumstances otherwise justify the use of force, *see id*; however, the defendant's knowledge of his victim's identity is not an element of the offense. The district court therefore properly denied Arnoldo's objection to the jury instruction on this ground.

VI.

For the foregoing reasons, the judgment of the district court is AFFIRMED.